State of Utah v. Morgan.

---

THE STATE OF UTAH, Respondent, v. JAMES MORGAN, Appellant.

CRIMINAL LAW—JURORS—VOIR DIRE EXAMINATION—NEW TRIAL—CHALLENGE—RIGHTS OF—HOW INFRINGED—ISSUE—ON CHALLENGE FOR ACTUAL BIAS—HOW TRIED—SECS. 4838-4839 AND 4840, R. S. 1898—MISCONDUCT OF JUROR—IN CRIMINAL CASE—MISCONDUCT OF ALL—VERDICT—IN CRIMINAL CASE—VITIATED BY MISCONDUCT OF JURY—NEW TRIAL FOR BIAS—FACTS SUFFICIENT—UNDER SEC. 4952, R. S. 1898—RIGHT OF ACCUSED—TO SPEEDY PUBLIC TRIAL BY IMPARTIAL JURY—CONST. ART. 1, SEC. 12—POWERS OF COURTS IN CRIMINAL CASES—SEC. 5136, C. L. U. 1888—STILL IN FORCE UNDER ART. 25,

State of Utah v. Morgan.

SEC. 2, CONST.—NOT INCONSISTENT WITH ART. 1, SEC. 12, CONST.—
NEW TRIAL—APPEAL—MOTION FOR NEW TRIAL—AFTER JUDGMENT IN
CRIMINAL CASE—WHEN MAY BE ENTERTAINED.

1. CRIMINAL LAW: JURORS: VOIR DIRE EXAMINATION: NEW TRIAL. When
it appears after trial that a juror had beforehand prejudiced the
case, but had improperly withheld this fact before acceptance, or
when asked as to opinion on *voir dire* had given false answers, and
such formation of opinion was unknown to the party at the time, a
new trial will be granted.

2. CHALLENGE: RIGHTS OF: HOW INFRINGED. The object of an examina-
tion of a juror on his *voir dire* is to ascertain whether there are
grounds for a challenge for either actual or implied bias; also to en-
able the accused to exercise intelligently his peremptory challenge,
and when the juror is conscientious and truthful such examination
is of great utility, but when some of the jurors selected are untruth-
ful and conceal their bias, when such exists, or deny facts which
show either actual or implied bias, the accused is misled and de-
prived of the important benefits which he would otherwise derive
from such examination; as well as of his right to a trial by an im-
partial jury.

3. ISSUE: ON CHALLENGE FOR ACTUAL BIAS: HOW TRIED: SECTIONS 4838,
4839, AND 4840, REVISED STATUTES 1898. Where a challenge for act-
ual bias is made by the accused and the fact upon which the chal-
lenge is based is denied by the State, under sections 4838, 4839 and
4840, the accused is entitled to have the issue tried and witnesses on
either side may be summoned and examined under the same rules
of evidence applicable in the trial of other issues.

4. MISCONDUCT OF JUROR: IN CRIMINAL CASE: MISCONDUCT OF ALL. The
jury being composed of twelve individuals, the misconduct of any
juror, actual or implied, "by which a fair and due consideration of the
case may have been prevented" is misconduct of the jury, because the
jury can only act as a unit and the misconduct of one of the mem-
bers can not be eliminated, and therefore in such cases the action of
the jury as a whole is invalid.

5. VERDICT: IN CRIMINAL CASE: VITIATED BY MISCONDUCT OF JURY. Mis-
conduct by one or more of the jury which might have been prejudi-
cial to the accused raises the presumption, especially in a capital
case, that the accused has been prejudiced thereby and vitiates the
verdict unless the prosecution shows beyond a reasonable doubt that
the prisoner has received no injury by reason thereof.

State of Utah v. Morgan.

6. NEW TRIAL FOR BIAS: FACTS SUFFICIENT: UNDER SECTION 4952, RE-
VISED STATUTES 1898. Where, in a criminal case, the admitted facts
show both actual and implied bias of two of the jurors, there is suf-
ficient ground for granting a new trial under section 4952, Revised
Statutes 1898.

7. RIGHT OF ACCUSED: TO SPEEDY PUBLIC TRIAL BY IMPARTIAL JURY:
CONSTITUTION, ARTICLE 1, SECTION 12: POWERS OF COURTS IN CRIMI-
NAL CASES. The right, of one accused of crime, to "a speedy public
trial by an impartial jury," guaranteed by section 12, article 1, Con-
stitution, can not be defeated by reason of the want of any legislative
remedy for a wrong inflicted during a criminal trial, for the court
will resort to the common law if it affords a remedy, and if it does
not, then courts, by virtue of their inherent power, and their duty
in criminal cases to guard the rights of persons will, if possible, de-
vise new remedies.

8. SECTION 5136, C. L. U., 1888: STILL IN FORCE UNDER ARTICLE 25, SEC-
TION 2, CONSTITUTION: NOT INCONSISTENT WITH ARTICLE 1, SECTION
12, CONSTITUTION: NEW TRIAL: APPEAL. Under the provisions of sec-
tion 2, article 25, Constitution, section 5136, C. L. U., 1888, is still
in force and not being inconsistent with either section 12, article 1,
or section 9, article 8, Constitution, gave the defendant the right to
move for a new trial upon facts discovered after judgment, and to
appeal from an order refusing to set aside the judgment and grant a
new trial.

9. MOTION FOR NEW TRIAL: AFTER JUDGMENT IN CRIMINAL CASE: WHEN
MAY BE ENTERTAINED. After a judgment in a criminal case has been
affirmed on appeal, and the case remanded, a motion for a new trial,
based upon facts which were not passed upon by the appellate court
or discovered before the appeal was taken, can be entertained by the
trial court.

Decided February 2, 1901.

Appeal from the First District Court Box Elder County.—
*Hon. Charles H. Hart,* Judge.

Defendant was convicted of the crime of murder in the
first degree and sentenced to be shot. From that judgment de-
fendant appealed and this court has heretofore affirmed that

judgment (See 22 Utah 162). This appeal is from an order overruling a motion for a new trial based upon facts coming to the knowledge of the defendant subsequent to the previous decision of this court in this case.

REVERSED.

*Thomas Fitch, Esq., J. D. Call, Esq., Ricy H. Jones, Esq.* and *George R. Chase, Esq.* for appellant.

*Hon. A. C. Bishop,* Atty. Gen'l and *Wm. A. Lee,* Deputy Atty. Gen'l for the State.

BASKIN, J.—It appears from the record that on the twelfth day of May, 1899, the defendant James Morgan (alias Abe Majors) was convicted in the First Judicial District Court in and for Box Elder County, of the crime of murder in the first degree, and on the sixteenth day of May, was sentenced to be shot, by the sheriff of said county, on the seventh day of July, 1899; that the defendant appealed from said judgment, and this court at the May term thereof, affirmed the judgment, that after the remittitur in the case reached the said district court said court, on the second day of July, 1900, made and entered an order requiring the sheriff of Box Elder County to execute the judgment and sentence aforesaid on the seventeenth day of August, 1900; that on the seventh day of August, 1900, defendant made, in pursuance of the notice thereof previously given, a motion to vacate said judgment and grant a new trial, and on said day the said district court made and entered an order overruling said motion, whereupon the defendant appealed to this court from said order.

The first ground of the motion is that William Fosgren and Robert C. Harris two of the jurors who sat upon the case,

previous to being chosen as jurors, used expressions to various persons which showed a bias against the defendant, and yet these jurors when examined on their *voir dire* answered that they had neither formed or expressed an opinion as to the guilt of the defendant. The expressions referred to are set out in the affidavits read in support of said motion, and from which the following quotations are made:

James Boden, in his affidavit, stated: "I am well acquainted with William Fosgren who afterwards acted as a juror in the case of the State v. James Morgan, and for an hour on the afternoon of the thirtieth of April, he and I talked together about the occurrence, and for more than half an hour before Deputy Sheriff Thompson brought in Abe Majors in town in a buggy. Fosgren and I during the half hour previous to that sat on the coping of the court house fence on the northwest corner. Will Fosgren brought the question up and he said: 'I hope they will kill them before they bring them up so as to have no bother.' I then made some statement in reply, and he said—referring to the defendant—'He had ought to be lynched.' "

Reese Richards, in his affidavit, stated: "I am a citizen of the United States of the age of 55 years and have resided in Brigham City for 37 years last past. I am acquainted with William Fosgren. Some two or three days subsequent to the killing of William A. Brown, to-wit, on or about the fourth day of May, 1899, in Brigham City I had a conversation with William Fosgren relative to the killing of Brown; the conservation took place in front of Wheelwright's store upon the sidewalk. William Fosgren told me that he had known Capt. Brown for some time and that he was a friend of his, he having worked for him. He told me that Abe Majors had ought to be hanged and he would only be getting what was due him, and then the debt would not be paid."

State of Utah v. Morgan.

Alviras Thompson, in his affidavit, stated: "I was in Brigham City early in May of 1899, standing by the gate in the court house grounds in company with William Fosgren, Vern Phillips, and others whose names I can not recall, and I heard Fosgren say that James Morgan ought to suffer death; that if he (Fosgren) was on the jury he would have him convicted, and that he, the said Morgan, deserved to die. Afterwards at the trial, when I learned that William Fosgren was on the jury it seemed strange that he should sit on the trial after what I heard him say, but I said nothing to anybody about it."

Charles E. Foxley, in his affidavit, stated: "I am a citizen of the United States, over the age of 21 years, and have been a resident of Box Elder County for twenty-four years, at present am manager of Foxley Brothers store, and assistant postmaster at the Point Lookout post-office; that I delivered on or about the sixth day of May, 1899, to Robert C. Harris a registered letter, which letter he opened in my presence, and which contained a subpoena as a juror for the May, 1899, term in the above entitled court; that I stated to him that I supposed he would sit on the Morgan murder case; that he said no, I guess not, as I have formed an opinion, and he is only a hobo, and ought to be hung. I have this day informed the attorneys for the defendant for the first time of this conversation, and know that they knew nothing of it before."

In the examination of William Fosgren on his *voir dire,* he was asked "from what you have heard or read have you formed or expressed an unqualified opinion as to the guilt or innocence of the defendant," and he replied, "I don't know as I have expressed any opinion at all." He further stated that from what he had heard he had formed somewhat of an opinion as to the guilt or innocence of the defendant, but did not know

of any reason why he could not sit in the case as a juror and a just verdict render according to the evidence as given by the witnesses, and according to the law as laid down by the court.

The other juror, Robert C. Harris, stated on his *voir dire* that he had neither formed or expressed an opinion, as to the guilt or innocence of the defendant.

The declarations of these jurors, as set out in said affidavits, were unknown to either the defendant or his attorneys, until the twenty-sixth day of July, 1900.

Both of said jurors made affidavits on behalf of the State on said motion, but did not deny the statements attributed to them in the affidavits made in support of said motion, nor is there anything in the record contradicting these affidavits, and therefore they must be considered as admitted.

It is evident that these jurors were biased and purposely made false statements under oath, in order to qualify as jurors. Especially is this so in respect to the juror Fosgren. For neither of these jurors in his affidavit denies that he had made the statements attributed to him, or stated that he did not remember when being examined, that he had made such statements, or alleged any excuse whatever for failing to reveal what he had previously said respecting the defendant.

There is an overwhelming array of authorities which hold that facts similar to those disclosed in this case, disqualify a juror, vitiate the judgment, and entitle the defendant to a new trial.

The following text of sec. 844 of Wharton's Crim. Proc. is supported by numerous cases cited in N. 2, to-wit:

"When it appears after trial that a juror had beforehand prejudged the case, but had improperly withheld this fact before acceptance, or when asked as to opinion on *voir dire* had given false answers, and such formation of opinion was

unknown to the party at the time, a new trial will be granted."
Sellers v. The People, 3 Scam. (Ill.) 413; State v. Taylor,
64 Mo. 358; State v. Wyatt, 50 Mo. 309; Henzie v. The State,
41 Tex. 573; Sam v. The State, 31 Miss. 480; Bussie v. The
State, 19 Ohio 198; Chartz v. Territory, 32 Pac. 166; Terri-
tory v. Kennedy, 3 Mont. 520; Moncrief v. The State, 59 Ga.
470; Romane v. The State, 7 Ind. 63; People v. Reese, 3 Utah
72; U. S. v. Christensen, 7 Utah 26; 1 Bish. Crim. Proc.
secs. 949, 6, and note 1; Maxwell's Crim. Proc., p. 648.

The State instead of contradicting the facts upon which
the motion is based, resists the motion on the ground that a
new trial can only be had upon the grounds and within the time
specified in sec. 4952, R. S.; that the ground of the motion
is not specified in said section, and the motion was not made
within the time prescribed.

It is provided in said section that "When a verdict shall
have been rendered against the defendant, the court may, upon
his application, grant a new trial in the following cases only:

"1.   When a trial shall have been had in his absence, if
the information or indictment is for a felony.

"2.   When the jury shall have received out of court any
evidence, other than that resulting from a view of the premises,
or any communication, document, or paper referring to the
case.

"3.   When the jury shall have separated without leave of
the court, after retiring to deliberate upon their verdict, or
have been guilty of any misconduct by which a fair and due
consideration of the case may have been prevented.

"4.   When the verdict shall have been decided by lot, or
by any means other than a fair expression of opinion on the
part of all the jurors.

"5.   When the court shall have misdirected the jury in
a matter of law, or shall have erred in the decision of any

question of law arising during the course of the trial, or shall have done or allowed any act in the case prejudicial to the substantial rights of the defendant.

"6.   When the verdict is contrary to law or evidence.

"7.   When new evidence shall have been discovered, material to the defendant and which he could not, with reasonable diligence, have discovered and produced at the trial."

The Territorial Supreme Court of Utah in the cases of the People v. Reece, 3 Utah 72 and United States v. Christensen, 7 Utah 26, which are analogous to the case at bar, granted a new trial notwithstanding section 5340 C. L. U., which was then in force, was the same as section 4952 of the Revised Statutes, except that the term "only" contained in the latter was not in the former section.

In the case of the People v. Reece, *supra,* a juror, upon his examination under oath as to his qualifications, said he was a citizen of the United States.   The defendant, after he was convicted, discovered that the juror was not a citizen of the United States, and on that ground moved for a new trial, which was refused by the trial court.   On appeal, it being admitted that a person not a citizen of the United States was disqualified to act as a juryman, the Supreme Court granted a new trial on the ground that the defendant had been deprived of his constitutional right.

In the case of United States v. Christensen, *supra,* the court said "He (the defendant) moved for a new trial upon the ground, among others, of misconduct of the jury tending to prevent a fair and due consideration of the case based upon affidavits showing that one John Harris, who was one of the petit jury which convicted him, was on the grand jury which found the indictment, and that the fact was not known to him or his counsel until after the verdict, and that the juror stated falsely on his *voir dire* that he had not formed or expressed

an unqualified opinion as to the guilt or innocence of the accused of the offense charged. * * * * * He may have voted against finding the indictment, or may have been absent when it was found, as twelve of the fifteen jurors constitute a quorum, and may transact business; but the presumptions of the law are all to the contrary, and, in the absence of any showing to that effect, he must be presumed to have participated in the finding of the indictment, and to have formed an opinion as to the guilt or innocence of the defendant. * * * * * Having served on the grand jury which found the indictment, and having formed or expressed an opinion or belief that the prisoner is guilty or not guilty of the offense charged, are each a ground of challenge to a juror for implied bias. 2 Comp. Laws 1888, sec. 5022, subds. 4, 8. And where the accused properly examines the jurors concerning their qualifications, and they do not answer truthfully, he is thereby not only deprived of his right of challenge for cause, but may also be prevented from exercising his right of peremptory challenge. If, in such a case, a defendant, in trying to ascertain whether the jurors are competent or not, without negligence on his part, is denied a new trial, the greatest injustice might be done." The order granting a new trial was affirmed.

It appears from the quoted statements of the court that the motion was based upon the provisions of subdivision 3 of section 4952.

In the case of People v. Plummer, 9 Cal. 399, it appears that two jurors, George T. Getchel and J. D. Denny, answered satisfactorily on their *voir dire,* and among other matters stated that they had not formed or expressed an opinion as to the guilt or innocence of the defendant, and were accepted as jurors. It was shown by affidavits on a motion for a new trial that one of the jurors had, previous to the trial, said in the presence of a number of persons that " the people of Nevada

ought to take the defendant out of jail and hang him;" and the other juror said that "the defendant ought to be hung before night" and one of the affiants heard the same juror say at a different time and place that " if the defendant got his dues they would hang him."

In the opinion of the Supreme Court, which was concurred in by that eminent judge, the late Stephen J. Field, the court said: "In support of his motion for a new trial, defendant offered evidence to show that certain jurors, who acted in the trial of the cause, were incompetent from actual bias. And the question is presented, whether an objection to the competency of a juror can be taken after verdict. On this point we have no doubt. * * * * * It is clear that neither of these jurors was competent to sit upon the trial of defendant, if, indeed, they were competent to sit in any case involving the life or liberty of a citizen. A man who could so far forget his duty as a citizen, and his allegiance to the Constitution, as to openly advocate taking the life of a citizen without the form of law, and deprive him of the chance of a jury trial, would not be likely to stop at any means to secure, under the forms of a legal trial, a result which he had publicly declared ought to be accomplished by an open violation of the law."

The judgment in that case was reversed, and a new trial ordered. The motion for a new trial as appears from the brief of the defendant's attorney, was based upon section 440 of the Crim. Prac. Act, Wood's Digest, p. 304. Said section, as it appears in said digest, is as follows:

"The court in which a trial is had upon an issue of fact has power to grant a new trial where a verdict has been rendered against the defendant, upon his application, in the following cases only: 1. When the trial has been had in his absence, if the indictment be for felony. 2. When the jury has received any evidence out of court other than that resulting

State of Utah v. Morgan.

from a view as provided in section three hundred and ninety. 3. When the jury has separated without leave of the court, after retiring to deliberate upon their verdict, or been guilty of any misconduct tending to prevent a fair and due consideration of the case. 4. When the verdict has been decided by lot, or by any. means other than a fair expression of opinion on the part of all the jurors. 5. When the court has misdirected the jury in a matter of law. 6. When the verdict is contrary to law or evidence."

The only difference between this section and section 4952 of the Revised Statutes of Utah, is in the fifth subdivision of the same.

In the case of People v. Turner, 39· Cal. 370, the facts are stated in the opinion of the court. · The court, in the opinion said: "After an issue of fact is joined in a criminal case, every step thereafter taken for the purpose of a determination of that issue, in the court where the cause is pending, up to and including the verdict upon such issue, must be regarded as a step or proceeding 'arising during the course of the trial,' within the meaning of section 440 of our Criminal Practice Act; hence, any substantial error of the court upon any matter or question intervening between the joining of issue of fact and the rendition of a verdict thereon, and any misconduct of a juror, who participates in the verdict, from the time he is called in the case and sworn and examined on his *voir dire* up to the final act of rendering the verdict, is proper ground for a motion for a new trial under said section * * * * * It appears by the affidavit of Samuel Kearney, that said juror, Reed, after he had been called and interrogated on his *voir dire,* as to his qualification as a juror in the case, and before he was finally sworn as a juror, attended and remained at a public meeting in Los Angeles, at which meeting the charge against defendant, upon which Reed had been called to pass as a juror,

was under discussion, in which defendant was denounced in most bitter terms. It further appears by the affidavit of Lewis Green, that this same juror, Henry Reed, during the progress of the trial, after the evidence was closed, talked to the affiant, Green, on his way to the court, and said, in reference to the case, 'that he would not talk about the case, but that his opinion was made, and that nothing could change him.' * * * * * A defendant on trial for felony ' is entitled to all the protection which the statute intends to secure against any interference with the action of the jury, whether arising from the hostility of personal enemies or popular prejudice;' and when it is shown, either that a juror has engaged in a conversation with others on the subject of the charge upon which he is to pass, or has voluntarily listened to the remarks of others addressed to himself or to third parties upon matters connected with the charge upon which, as a juror, he has been called upon to pass, then such conduct is *prima facie* established as to authorize the court for that reason to set aside the verdict."

The impropriety of the jurors' acts in the case at bar are more flagrant than the conduct of the juror in the case of the People v. Turner, for each of the former made under oath false statements on his *voir dire* that he had not formed or expressed an opinion as to the guilt or innocence of the defendant. That their statements were false is not disputed.

If they had stated on their *voir dire* the undisputed facts, the attorneys of the defendant would no doubt have challenged the jurors for actual bias, for it is not supposable that any attorney defending a prisoner, charged with a capital crime, would permit any juror, who had expressed such hostility, to serve on the trial of his client, without objection.

. Upon the admitted facts both of the jurors were disqualified and could have been successfully challenged both at common law, and upon the grounds specified in subdivision 2, sec-

State of Utah v. Morgan.

tion 4833 and subdivision 8, section 4834, Revised Statutes, to-wit:

"For the existence of a state of mind on the part of the juror which leads to a just inference, in reference to the case that he will not act with entire impartiality, which is known in this code as actual bias; and having formed or expressed an unqualified opinion or belief that the prisoner is guilty or not guilty of the offense charged." People v. Edwards, 41 Cal. 640; People v. Brotherton, 43 Cal. 530.

The object of an examination of a juror on his *voir dire* is to ascertain whether there are grounds for a challenge for either actual or implied bias; also to enable the accused to exercise intelligently his peremptory challenge, and when the juror is conscientious and truthful such examination is of great utility, but when some of the jurors selected are untruthful and conceal their bias, when such exists, or deny facts which show either actual or implied bias, the accused is misled and deprived of the important benefits which he would otherwise derive from such examination; as well as of his right to a trial by an impartial jury.

Where a challenge for actual bias is made by the accused, and the fact upon which the challenge is based is denied by the State, under sections 4838, 4839 and 4840, the accused is entitled to have the issue tried and witnesses on either side may be summoned and examined under the same rules of evidence applicable in the trial of other issues.

By the false statements of these jurors undisputed facts were concealed from the defendant which if revealed would have been sufficient ground on which to sustain a challenge for both actual and implied bias, and which if overruled would have been error.

Motions for new trials were evidently sustained in the

territorial and California cases, before cited, on the ground mentioned in the last clause of subdivision 3, section 4952, Revised Statutes, which is "misconduct (of the jury) by which a fair and due consideration of the case may have been prevented." The State's Attorney contends that the only grounds for a new trial under the provisions of said subdivision is the misconduct of the jury as a body; that the misconduct of a juror before he is sworn as such is not a ground for a new trial under its provisions.

The jury being composed of twelve individuals, the misconduct of any juror, actual or implied, "by which a fair and due consideration of the case may have been prevented" is misconduct of the jury because the jury can only act as a unit and the misconduct of one of the members can not be eliminated, and therefore in such cases the action of the jury as a whole is invalid.

The cases are numerous which hold that misconduct by one or more of the jury which might have been prejudicial to the accused raises the presumption, especially in a capital case, that the accused has been prejudiced thereby and vitiates the verdict unless the prosecution shows beyond reasonable doubt that the prisoner has received no injury by reason thereof. State v. Prescott, 7 N. H. 287; People v. Backus, 5 Cal. 275; People v. Thompson, 74 Cal. 482; People v. Turner, 39 Cal. 370, 375; People v. Brannigan, 21 Cal. 338; Wise v. The State, 22 Ohio St. 486; State v. Dolling, 37 Wis. 396; Lewis v. The State, 9 Smede & Mar. 115; Davis v. The State, 35 Ind. 496; Westmoreland v. The State, 4 Ga. 225; Organ v. The State, 26 Miss. 78; 1 Bish. Crim. Proc., sec. 999 and N. 3.

Suppose that these jurors instead of making false statements under oath, had, after being sworn as jurors, been bribed to convict the defendant, it certainly would be presumed, upon

that fact being shown on a motion for a new trial, that their
action had been influenced by the bribe, and that their verdict
was the result of "means other than a fair expression of opinion
on the part of all the jurors."    (Subd. 4, sec. 4952, R. S.)
But suppose such a bribe had been received by these jurors after
they were summoned but before they were sworn on their *voir
dire,* would not the same presumption arise?

It is clear that either of the supposed events is good ground
for granting a new trial, under both subdivisions 3 and 4, sec-
tion 4952, Revised Statutes.

The admitted facts show both the actual and implied bias
of the jurors, and that under oath they not only denied their
bias but concealed the facts which would have conclusively
shown such bias, and by so doing they caused themselves to be
retained upon the jury.   Now is not the presumption as strong
that their bias influenced their action, and that the verdict was
the result of "means other than a fair expression of opinion
from the evidence, on the part of all of the jurors," as the
presumption in the supposed case of bribery or the pre-
sumptions mentioned in the numerous cases hereinbefore cited
under this head?

The admitted facts furnish grounds for granting a new
trial under section 4952, Revised Statutes.

Each of these jurors in his affidavit states that he acted
impartially in the case, but in view of their false statements
and concealments of the facts admitted on this motion, their
statements are not sufficient to overcome the presumption aris-
ing from the admitted facts, for it is a maxim of general appli-
cation to witnesses *"Falsio in uni falsio in omnibus."*   Such
jurors, as said in People v. Plummer, *supra,* "would not be
likely to stop at any means to secure under the forms of a
legal trial a result which they had publicly declared ought to
be accomplished by an open violation of the law."

Among the personal safeguards contained in section 12, article 1, Constitution, is the right of the accused in a criminal case, to "have a speedy public trial by an impartial jury." Few, if any, more flagrant violations of that right, especially when the accused's life is in jeopardy, can be imagined, than the presence on the jury of one or more individuals having either actual or implied bias against the prisoner, and who had under oath falsely qualified as jurors.

The construction placed upon the provisions of section 4952, in the case of the People v. Fair, 43 Cal. 137, and contended for by the attorney for the State in this case, if accepted, would destroy all remedies for such flagrant violation of the defendant's constitutional right to a trial by an impartial jury. Such a construction is untenable, not only for the reasons already advanced, but it is a maxim of general application *"Ubi jus, ibi remedium."* 1 Term Rep. 512; Coke Litt. 197; Entick v. Carrington, 19 How. St. Trials, 1066; Broom's Leg. Max. 147.

And when the wrong is the violation of constitutional rights the legislature has no power to prohibit, or substantially impair all remedies, as to do so would be a violation of the Constitution.

In the absence of any legislative remedy for such wrongs, the courts will resort to the common law if it affords a remedy, and if it does not, then the courts, by virtue of their inherent power, and their duty in criminal cases to guard the rights of persons will, if possible, devise new remedies, as has been done from a very remote period of time, by equity courts, to meet new conditions and supply remedies for wrongs, when none already existed.

Bishop in the first volume of his work on Criminal Procedure, sections 113, 115, 307, says:

"A right of which the possessor can not avail himself is

practically no right.   Hence every person before a court must
be suffered, in some way, to take advantage of every right which
he is admitted to have.   Thus,—Statutes changing the pro-
cedure—must be so construed as not to leave a prisoner remedi-
less with respect of any acknowledged right.   Though a right
not secured by the Constitution may be taken away, even this
construction should be avoided unless its terms are direct.
* * * * * It is a doctrine extending through every department
of the law, that rights when vested in individuals are un-
changeable, while the remedies by which those rights are en-
forced may be varied from time to time at the pleasure of
the Legislature.   Now, within this principle, the absolute
rights of prisoners, especially the constitutional ones, in re-
spect of their defense, can not be taken away.   But they can
be modified as to time, place, and manner of their enforce-
ment,—only the substance of them must be preserved. * * * * *
The doctrine is of the highest importance and it pervades the
entire law of criminal procedure. * * * * * The judge should
counsel and assist the prisoner, and the prosecuting officer
should avoid whatever might lead to an unjust conviction."
Black's Const. Law, sec. 171.

The opinion in the case of People v. Fair, 43 Cal. 137,
cited by the attorney for the State, fully sustains his con-
tention, and in terms overrules the case of People v. Plummer,
supra, but makes no reference to the case of People v. Turner,
supra.   The reasons assigned in the opinion in the case of
People v. Fair for overruling People v. Plummer are not sound,
but this overruled case, and the case of People v. Turner are
supported by sound reason, and as they are in harmony with
the decisions of the Territorial Supreme Court before quoted
they should be followed rather than the case of the People
v. Fair.

Under another view of the case the defendant is entitled

to have the judgment vacated and the case remanded for a new trial:

Under section 12, article 1, of the State Constitution, it is provided that the accused shall have "*the right to appeal in all cases*," and it is provided in section 2, article 25 that all laws of the territory of Utah now in force, not repugnant to the Constitution, shall remain in force until they expire by their own limitation, or are altered or repealed by the Legislature."

At the adoption of the Constitution subdivision 3, section 5136 of the criminal procedure act of the territory, C. L. U. 1888, p. 729, was in force, and provides that an appeal might be taken from an order made after judgment effecting the substantial rights of the defendant.

This provision has not been repealed or amended, but is still in force, and is not inconsistent with either section 12, article 1, or section 9, article 8, which allows appeals from all final judgments, for it can not, with any show of reason, be claimed that the granting of an appeal from an order made after judgment, which affects a substantial right, in any way conflicts with the section of the Constitution allowing an appeal in all criminal cases, or is inconsistent with the section allowing an appeal from all final judgments.

As the defendant did not discover the facts in regard to the violation of his constitutional right to a fair trial by an impartial jury until long after sentence of death had been passed upon him, the motion under consideration was the only way in which he could seek redress for the wrong, and as it was necessarily made after judgment and effected his substantial right, he not only had a right to make the motion but also had the right to appeal from the order refusing to set aside the judgment and grant a new trial, unless, as claimed by the State, he failed to move in proper time.

Under section 4953, Revised Statutes a motion for a new

trial, if based upon the grounds of subdivision 3 or 4 of section 4952, must be filed and served within thirty days after the discovery of the facts upon which the party, making the motion relies.

The admitted facts set out in the affidavits filed in support of the motion in this case, were, as appears from said affidavits, not discovered by defendant until the twenty-sixth day of July, 1900. The motion was overruled on the seventh of August of that year, so that the motion was made within the time prescribed by statute. Previous to filing the motion an appeal had been taken from the judgment by the defendant and the judgment affirmed by this court, and the case remanded to the court below. This raises the question whether after a judgment has been affirmed on appeal, and the case remanded, a motion for a new trial, based upon facts which were not passed upon by the appellate court or discovered before the appeal was taken, can be entertained by the court below.

In the case of Nugent v. Met. St. Ry. Co., 61 N. Y. S. 476, the court said: "It is also argued that the motion should have been denied on the ground of laches. We do not think so. In Keister v. Rankin, supra, this court held, the presiding justice rendering the opinion, that 'it is never too late to do justice. When the ends of justice require that a new trial should be had, the Supreme Court may act, although the case may have been to the Court of Appeals and disposed of there.' The court is constituted to enforce legal rights and redress legal wrongs, and whenever it is made to appear, as it is in this case, that a wrong has been perpetrated, it never hesitates to exercise the power which it has, unless to do so would do a greater injury than to refuse to exercise it."

In Keister v. Rankin, 54 N. Y. S. 274, referred to, the judgment had been affirmed by the appellate court, yet a new

trial was ordered to be granted by the court below. Cook v. Smith, 58 Iowa 607.

The last case arose under provisions similar to those of section 4954.

It was suggested in the argument that the Board of Pardons is the only body that can grant the defendant any relief. If that body should upon application commute the sentence of the defendant to imprisonment for life, or to shorter term, still the fact would remain that that punishment if inflicted would be in violation of his constitutional right, and if he should be pardoned then he would escape punishment for a crime of which a fair and impartial jury might find him guilty.

It is ordered that the order of the lower court denying defendant's motion be set aside, at respondent's costs, and the case be remanded with directions to the court below to vacate the judgment and grant a new trial.

MINER, C. J., concurring in the order:

I am satisfied from the showing made by the record that the appellant did not have a fair trial because of the expressed bias of two of the jurors who were allowed to pass upon the question of his guilt; and, while I entertain a grave doubt, as to the power of the court, under section 4953, Revised Statutes, to consider the case and grant a new trial because of the delay in presenting the motion, yet, because of the serious consequences attending the execution of the judgment, under the facts shown, I am constrained to give the accused the benefit of that doubt, and therefore concur only in the order granting him a new trial.

BARTCH, J., concurring in the judgment:

The affidavits on the part of the defendant in this case show that two of the jurors, who convicted him, had previous to the trial formed and expressed unqualified opinions adverse

to the prisoner, and, as appears, were prejudiced and acted under the influence of bias in the consideration of the question of his guilt.    The prosecution has failed, satisfactorily, to show the contrary, or that the defense, in the exercise of reasonable diligence and vigilance, could have discovered the bias and prejudice.

A very careful examination and consideration of the record now before us, impels the conclusion that the trial was not conducted before a fair and impartial jury as required by law. Such being the fact and this being a case in which the death penalty is to be inflicted, I concur in the judgment granting a new trial.