STATE, RESPONDENT, *v.* BROOKS, APPELLANT.

(No. 4,419.)

(Submitted March 2, 1920. Decided April 8, 1920.)

[188 Pac. 942.]

*Criminal Law—Sedition—Trial—Selection of Jury—Challenges —Refusal—Prejudicial Error—Information—Sufficiency.*

Sedition—Reading Information to Jury—Refusal—Error.
    1. In a prosecution for sedition for distributing a pamphlet containing statements the nature and probable effect of which was alleged to have been the obstruction of the national draft law, refusal to permit defendant's counsel to read the information and a copy of the pamphlet to the jurors as a basis of their *voir dire* examination was error.

Same—Jury—Purpose of *Voir Dire* Examination—Nature of Right.
    2. The *voir dire* examination of jurors is a right secured to defendant by statute, its purpose being to ascertain whether there exist grounds for challenge for cause, and to enable counsel to exercise intelligently the peremptory challenges allowed by law.

Same—Jury—Refusal of Challenge—When Error.

　　3.　If an objectionable juror is forced upon a defendant after he has exhausted his peremptory challenges, a ruling of the court denying a challenge for cause as to such juror will constitute reversible error, if the challenge should have been sustained.

Same—Impartial Jury—Statutes—Constitution.

　　4.　The right to trial by an impartial jury, every member of which is impartial, given by the Constitution (Article III, section 16), is an unqualified one, which it is beyond the power of the legislature to curtail, and any provisions of the statutes which relate to the selection of a jury are to be understood as merely providing the means by which the constitutional guaranty may be exercised to the fullest extent.

Same—Prejudiced Juror—Refusal of Challenge—Error.

　　5.　A juror who testified on his *voir dire* examination that he entertained a bitter prejudice against the Industrial Workers of the World and against every member of it, which would abide with him throughout the trial, that it would require evidence to remove the prejudice, and less evidence to convict defendant, who was a member of the organization, than if he were not a member, was not an impartial juror, and refusal to grant a challenge for cause was error.

Same—Depriving Defendant of Substantial Right—Reversal of Judgment.

　　6.　Whenever it is made to appear in a criminal prosecution that a substantial right has been denied to a defendant, his conviction will not be upheld on appeal.

Same—Conviction—*Quantum* of Proof Necessary.

　　7.　The least *quantum* of proof upon which a judgment of conviction can be made to rest is that produced by evidence sufficient to establish the defendant's guilt beyond a reasonable doubt.

Same—Selection of Jury—Failure to Observe Statute—Effect.

　　8.　The fact that the evidence is sufficient to establish the guilt of one accused of crime cannot be held to have rendered harmless the failure of the court to observe the law in selecting the jury to try him.

Same—Manner of Conducting Trial—Remarks of Judge—New Trial.

　　9.　Remarks of the judge during the progress of a criminal trial and the manner of conducting it may be such as to indicate to the jury that he is prejudiced against defendant and deprive him of a fair trial, necessitating a reversal of the judgment of conviction.

Same—Information—Sufficiency.

　　10.　Information charging that defendant circulated a pamphlet during the progress of the war containing, among others, the statements: "Let those who own the country do the fighting. Put the wealthiest in the front ranks; the middle class next; follow these with judges, lawyers, preachers, and politicians. Let the workers remain at home and enjoy what they produce. Follow a declaration of war with an immediate call for a general strike. Make the slogan, 'Rebellion sooner than war,' " the natural and probable effect of which was to obstruct the draft and the enlistment service of the government, *held,* sufficient to charge sedition.

　　*Appeal from District Court, Beaverhead County; Jos. C. Smith, Judge.*

　　　　57 Mont.—31

ALBERT BROOKS was convicted of sedition, and from the judgment and from an order denying his motion for new trial, he appeals. Reversed and remanded.

*Messrs. Pease & Stephenson* and *Messrs. Nolan & Donovan,* for Appellant, submitted a brief; *Mr. Harlow F. Pease* and *Mr. Timothy F. Nolan* argued the cause orally.

Before taking up the specific rulings, we think it proper to discuss two propositions which go to the root of the principal disqualifying cause urged against the Jurors Stinson, Hollingsworth, Andrus, Shawver and Barrett. Both of these propositions the court seemingly ignored. They are: 1. A prejudice against a class is a prejudice against an individual member of that class. 2. Such a prejudice is not "an opinion upon the matter or cause to be submitted to such jury" within the meaning of section 9264, Revised Codes, and the jury cannot be qualified by declaring that they will lay aside such prejudice.

Upon the first mentioned proposition there are a considerable number of decisions clearly sustaining us. (See *Coughlin* v. *People,* 144 Ill. 140, 165, 19 L. R. A. 57, 33 N. E. 1; *United States* v. *Upham,* 2 Mont. 170; *Shane* v. *Butte Elec. Ry. Co.,* 37 Mont. 599, 97 Pac. 958; *Winnesheik Ins. Co.* v. *Schueller,* 60 Ill. 465; *Lawlor* v. *Linforth,* 72 Cal. 206, 13 Pac. 496; *Quill* v. *Southern Pac. Co.,* 140 Cal. 268, 73 Pac. 991; *Territory* v. *Chartz,* 4 Ariz. 4, 32 Pac. 166; *Beach* v. *Seattle,* 85 Wash. 379, 148 Pac. 39.)

Next, we take up the question of the juror declaring that the prejudice in his mind can be laid aside and that he will render an impartial verdict. This is a complete confusion of the statutory rule enacted for the purpose of qualifying persons who have formed opinions based on newspapers, public rumors, *etc.* (Sec. 9264, Revised Codes.) This section has been repeatedly construed. (*People* v. *Riggins,* 159 Cal. 113, 112 Pac. 862; see, also, *State* v. *Beuerman,* 59 Kan. 586, 53 Pac. 874.) We insist that there is no room whatever for the application of section 9264, for the reason that this state of mind which we call, in

common parlance, prejudice, is not an opinion at all. An opinion results from an intellectual process. A prejudice results from an unintellectual emotion, such as fear, desire or malice. (See *Territory* v. *Chartz, supra; Scribner* v. *State*, 3 Okl. Cr. 601, 35 L. R. A. (n. s.) 985, 108 Pac. 422.)

Throughout the selection of the jury, and on ten specific occasions, the court of its own motion intervened in the examination and elicited, or attempted to elicit from jurors, after they had clearly disqualified themselves, some statement in contradiction of what they had previously said in order to find ground for denying the challenge. The effect of this is illustrated by the following passage: "Bontecou, it is true, was brought to make answer that he could render a fair and impartial verdict, in accordance with the law and the evidence, but that result was reached only after a singularly argumentative and persuasive cross-examination by the court." (*Coughlin* v. *People, supra.*) "It is possible for a judge to deprive a party of a fair trial, even without intending to do so, by the manner in which he conducts the case, and by a plain exhibition to the jury of his own opinions in respect to the parties, or to their case." (By Cooley, C. J.) (*Wheeler* v. *Wallace*, 53 Mich. 355, 19 N. W. 33.) "Throughout the trial the greatest latitude was allowed the assistant state attorney, but the defense was held to the strict rules of evidence and procedure. We consider it necessary to call attention to these matters, so that another trial of the defendant may be free from similar improprieties." (*Blackwell* v. *State* (Fla.), 79 South. 731, 1 A. L. R. 516.)

The general rule as to the prejudicial effect of remarks of the court has been recently recognized in *State* v. *Tate*, 55 Mont. 343, 177 Pac. 243. There is a close similarity between the trial court's action in the *Tate Case* and in the case at bar, appealed from the same trial judge. There the court stopped counsel from making a certain argument to the jury—here he stopped counsel from pursuing a certain line of *voir dire* examination. There he followed his ruling by misstating the evidence—here

he followed it by aspersing counsel's motives and uttering an unprovoked threat of contempt proceedings. (See, also, *Kirk v. Territory,* 10 Okl. 46, 60 Pac. 797; *State v. Phillips,* 59 Wash. 252, 109 Pac. 1047; *State v. Moneymaker,* 100 Wash. 463, 171 Pac. 253; *State v. Harkin,* 7 Nev. 377, 383; *State v. Stowell,* 60 Iowa, 535, 15 N. W. 417.)

Upon the cross-examination of defendant, who took the stand as witness in his own behalf, he was questioned concerning the making of a number of statements alleged to have been made by him at times preceding by many months the occurrence for which he was prosecuted. This was unquestionably by way of laying a foundation for the impeachment of his credit in that he had testified he had no desire or intent to obstruct the draft or enlistment laws, and that he entertained in his mind no disaffection or disloyalty to the cause of the United States in connection with the war. Defendant denied having made the statements imputed to him and they were subsequently testified to in rebuttal by the state's witnesses. This was prejudicial error. (*People v. Davenport,* 13 Cal. App. 632, 110 Pac. 318; *State v. Broadbent,* 27 Mont. 342, 71 Pac. 1; *State v. Cadotte,* 17 Mont. 315, 42 Pac. 857; *Thiele v. Newman,* 116 Cal. 571, 48 Pac. 713; *Culpepper v. State,* 4 Okl. Cr. 103, 140 Am. St. Rep. 668, 31 L. R. A. (n. s.) 1166, 111 Pac. 679; *State v. Jarvis,* 18 Or. 360, 23 Pac. 251; *Albert v. McKay & Co.,* 174 Cal. 451, 163 Pac. 666; *National City Bank v. Shelton E. Co.,* 96 Wash. 74, 164 Pac. 933; *State v. Chynoweth,* 41 Utah, 354, 126 Pac. 302; *Thompson v. Los Angeles etc. R. R. Co.,* 165 Cal. 748, 134 Pac. 709.)

Wherever evidence is introduced for a certain limited purpose, which might have a prejudicial effect if considered by the jury for other purposes, the defendant is entitled of right to have a cautionary instruction given to the jury limiting their consideration of such evidence to the true issue upon which it is admitted. (*State v. Nielson,* 38 Mont. 451, 100 Pac. 229; *Bruner v. United States,* 21 Okl. 410, 96 Pac. 597; *Gray v. State,* 4 Okl. Cr. 292, 32 L. R. A. (n. s.) 142, 111 Pac. 825;

*People* v. *Castile,* 3 Cal. App. 487, 86 Pac. 746; *People* v. *Botkin,* 9 Cal. App. 244, 98 Pac. 861.)

Mr. *S. C. Ford,* Attorney General, and Mr. *Otto A. Gerth,* Assistant Attorney General, for the State, submitted a brief; *Mr. Gerth* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The defendant was charged with the crime of sedition in obstructing and attempting to obstruct the national selective draft law and the recruiting and enlistment service of the United States at a time when this nation was engaged in the World War, by distributing a pamphlet entitled "War and the Workers by Walker C. Smith." He was convicted and sentenced to imprisonment in the penitentiary and has appealed from the judgment and f·om an order denying his motion for a new trial.

The principal errors assigned relate to the preliminaries of [1, 2] the trial. Counsel for defendant obtained leave of court to read the information to the jurors as a basis for the *voir dire* examination, but after reading the formal portion was stopped, upon objection of the county attorney, and denied the right to read the copy of the pamphlet contained in the information. We are unable to understand the theory of the court's ruling. The record discloses that the county attorney had "made a brief statement to the entire panel as to the nature of the case on trial," but the objection interposed to the reading of the information discloses that the contents of the pamphlet had not been made known to the jurors, and that for some reason the county attorney was trying to prevent the contents becoming known to them at that time. The *voir dire* examination of jurors in any criminal case would be an idle ceremony, a useless waste of time, unless the jurors were first made acquainted with the details of the charge preferred against the accused. As a matter of practice it is immaterial whether the

substance of the charge be disclosed by reading the information or by an oral statement of counsel. It is apparent, however, that in this instance the objection was not to the mode of procedure, but to the procedure itself. The *voir dire* examination of jurors is a right secured to the defendant by the statutes and has a definite double purpose: First, to ascertain whether there exist grounds for challenge for cause; and, second, to enable counsel to exercise intelligently the peremptory challenges allowed by law. (*State* v. *Morgan*, 23 Utah, 212, 64 Pac. 356; 24 Cyc. 338; 16 R. C. L. 281.) The trial court erred in refusing to permit counsel for defendant to make known to the jury the details of the charge preferred against the accused.

In the selection of the jury counsel for defendant challenged for actual bias Jurors Stinson, Hollingsworth, Andrus, Barrett and Shawver, but each of the challenges was overruled. Defendant exhausted his peremptory challenges, and in doing so employed four of them to exclude from the jury Stinson, Hollingsworth, Andrus and Barrett. Shawver was one of the jury that tried the cause and returned the verdict of guilty. Many of the assignments relate to the *voir dire* examination of these jurymen, including the ruling in each instance upon the challenge for cause. The attorney general insists that, since Stinson, Hollingsworth, Andrus and Barrett were not of the jurors who tried the cause, the errors, if any, committed in the examination of them are not subject to review. Consideration of this question is not necessary to a determination of these appeals, and we reserve our decision upon it. Authorities favoring, and others in opposition to, the contention will be found cited in the note to *State* v. *Thorne,* Ann. Cas. 1915D, 98.

The rule is recognized everywhere, that if any objectionable [3] juror is forced upon the defendant after he has exhausted his peremptory challenges, the ruling of the court denying a challenge for cause as to such juror will constitute reversible error if the challenge should have been sustained. (Thompson & Merriam on Juries, sec. 276; 16 R. C. L. 291.) The reason for the rule is apparent at first glance. The Constitution

(Art. III, sec. 16) guarantees to everyone accused of crime the right to a trial by an *impartial* jury, and the term "impartial jury" means a jury every member of which is impartial.

The juror Shawver testified that he was acquainted with the organization known as the Industrial Workers of the World; that he entertained a bitter prejudice against the organization and against every member of it; that if it should be developed upon the trial, as it was, that the defendant was then a member of the organization, the prejudice would extend to him and would abide with the juror throughout the trial; that it would require evidence to remove the prejudice and would require less evidence to convict the defendant than it would if he were not a member.

Actual bias is defined by section 9261, subdivision 2, Revised Codes, as "the existence of a state of mind on the part of the juror in reference to the case, or to either of the parties, which will prevent him from acting with entire impartiality and without prejudice to the substantial rights of either party."

The constitutional right to trial by an impartial jury is an [4] unqualified one. The guaranty of that right is found in our Bill of Rights, which declares the fundamental principles necessary to the protection of liberty and the security of government, and which, to all people of the Anglo-Saxon race, are their heritage from the great charter of English liberty. It is beyond the power of the legislature to curtail the right, and therefore the provisions of the statutes which relate to the selection of a jury are to be understood as merely providing the means by which the constitutional guaranty may be exercised to the fullest extent.

Can it be said, then, that a juror who entertains a bitter [5] prejudice against a class of which the defendant is one can act with entire impartiality in passing upon the question of the defendant's guilt or innocence? We think not, even if there were nothing further to shed light upon the state of his mind. (*Shane* v. *Butte Electric Ry. Co.*, 37 Mont. 599, 97 Pac. 958.) In this instance we are not restricted to so meager a

record.   The juror testified that his prejudice was of such a character that it would abide with him throughout the trial or until evidence had been introduced sufficient to remove it.

Authorities are not wanting which hold that it is not *per se* a disqualification that the juror entertains prejudice against the defendant which requires evidence to remove, but with that doctrine we have no sympathy.   The purpose of a trial of a criminal case is to determine the guilt or innocence of the accused, not to remove the pre-existing prejudice from a juror's mind. It is not to be presumed that the state will introduce the evidence necessary to effect the removal, and it must follow logically that, if the rule adverted to is to be countenanced, the defendant must enter upon the trial with the burden imposed upon him of first convincing the juror that his prejudice is unfounded before the merits of the defense can be considered. Such a burden the defendant cannot be compelled to assume.

The facts of this case do not bring it within the exception noted in section 9264, Revised Codes.   No complaint is made that the juror had formed or expressed an opinion as to the guilt or innocence of the accused.   He is charged with such prejudice against the defendant as would prevent him from acting with entire impartiality.   (*People* v. *Riggins,* 159 Cal. 113, 112 Pac. 862.)

For  many years this court has uniformly adhered to and [6]   enforced the rule that a conviction will not be set aside for technical errors or defects appearing in the record which do not affect the substantial rights of the accused.   That rule does not conflict in the least with the other one that, whenever it is made to appear that a substantial right has been denied to defendant, his conviction will not be upheld.

The least *quantum* of proof upon which a judgment of [7]   conviction can be made to rest is that produced by evidence sufficient to establish the defendant's guilt beyond a reasonable doubt.   (Sec. 8028, Rev. Codes.)   The rule does not admit of any exception; but the juror Shawver testified that, because of defendant's membership in the organization known

as the Industrial Workers of the World, it would require less evidence to convict him than it would if he were not a member of the organization, or, in other words, the state of the juror's mind was such that, because of defendant's membership in the organization, his conviction would be justified by less evidence than the minimum required by law.

The attorney general seeks to avoid the effect of the juror's testimony above by reference to his answers made in response to suggestive questions propounded by the presiding judge. Typical of these questions and answers is the following: "Q. The point is this: The main thing to find out from the jurors is whether or not, placing the man on trial before them, there is any one of them that has his mind made up he is not going to be fair and impartial toward that man. Now, do you believe that you would be in any wise unfair or impartial, rather put it unfair, towards this man? A. No, sir." The observations of this court in *Shane* v. *Butte Electric Ry. Co.,* above, are peculiarly pertinent here. In the light of the testimony theretofore given by the juror and the form of this question propounded to him, the answer above is not entitled to serious consideration. It amounted to nothing more nor less than this: That, admitting his bitter prejudice, the juror had confidence in his ability to act as though he did not entertain any prejudice at all, or, stated differently, the effect of the juror's testimony was that in his opinion he could act with perfect impartiality in convicting the defendant. He might as well have said frankly: "If I am selected as a juror to try this case, I will give the defendant a fair and impartial trial and find him guilty."

It will not do to say that, because the evidence is sufficient [8] to establish the defendant's guilt, therefore the failure to observe the law in selecting the jury to try him ought not to work a reversal of the judgment. The application of such a doctrine would destroy every right guaranteed by the Constitution, lead to anarchy, and defeat the very purpose for which courts are created, *viz.,* to administer justice according to law.

The juror Shawver was clearly disqualified, and the court erred in overruling the challenge for cause. (*Shane* v. *Butte Electric Ry. Co.,* above; *Scribner* v. *State,* 3 Okl. Cr. 601, 35 L. R. A. (n. s.) 985, 108 Pac. 422; *Coughlin* v. *People,* 144 Ill. 140, 19 L. R. A. 57, 33 N. E. 1.)

Numerous errors are predicated upon remarks made by the [9] court during the progress of the trial, and the manner in which the trial was conducted is made the subject of vigorous. criticism. Without intending to reflect in the least upon the integrity or honesty of purpose of the presiding judge, we think this record suggests that, if he was not prejudiced against the defendant, his remarks and manner of conducting the trial might well have led the jury to believe that he was. We quote approvingly the following language by Chief Justice Cooley in *Wheeler* v. *Wallace,* 53 Mich. 355, 19 N. W. 33: "It is possible for a judge to deprive a party of a fair trial, even without intending to do so, by the manner in which he conducts the case, and by a plain exhibition to the jury of his own opinions in respect to the parties, or to their case; and, when it is apparent that a fair trial has not been had, a court of review should give relief as soon for that cause as for any other." To the same general effect are *State* v. *Stowell,* 60 Iowa, 535, 15 N. W. 417; *State* v. *Harkin,* 7 Nev. 377, and 16 C. J. 827.

The other assignments require but brief consideration. Defendant's instruction No. 2 placed too great a restriction upon the evidence to which it was directed. (*State* v. *Wyman,* 56 Mont. 600, 186 Pac. 1.) His offered instruction No. 3 presents the same question that was decided adversely to his contention in *State* v. *Smith, ante,* p. 349, 188 Pac. 644; and his offered instruction No. 4 presents the same contention that was decided adversely to him in *State* v. *Wyman,* above.

Instruction No. 1, offered by the defendant, is in effect a [10] peremptory direction to the jury to return a verdict of not guilty. It proceeds upon the assumption that the information does not state a public offense. It must be conceded that from the very language employed in it the pamphlet in ques-

tion must have been published some time before we entered the war. It is directed against war generally and against what is denominated the agitation for war with Mexico and Japan. It contains many statements that to a person not in sympathy with the views of the author would doubtless be considered witless; but it does contain some statements the natural and probable effect of which would be to obstruct the draft and the recruiting and enlistment service of the government; for instance, the following: "Let those who own the country do the fighting. Put the wealthiest in the front ranks; the middle class next; follow these with judges, lawyers, preachers, and politicians. Let the workers remain at home and enjoy what they produce. Follow a declaration of war with an immediate call for a general strike. Make the slogan, 'Rebellion sooner than war.'"

We think the information states a public offense, and that the court did not err in refusing to direct an acquittal.

Our conclusion is that the defendant was not accorded that fair and impartial trial guaranteed to him by the Constitution and laws of this state, and for this reason the judgment and order are reversed, and the cause is remanded to the district court of Beaverhead county for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HURLY, MATTHEWS and COOPER concur.