[No. 2,859.]

## THE PEOPLE OF THE STATE OF CALIFORNIA *v.* JAMES C. EDWARDS.

CHALLENGE OF JUROR FOR IMPLIED BIAS.—The unqualified expression of an opinion as to the guilt or innocence of a prisoner on trial is ground of challenge of a juror for implied bias.

ANSWER TO CHALLENGE.—It is no answer to such challenge to say that in the mind or thought of the party challenged the opinion was qualified, though in its form of expression it was unqualified. The admitted fact being that he had unqualifiedly expressed his opinion upon the question of the guilt or innocence of the prisoner, he was thereby, in judgment of law, incompetent to serve as a juror.

EVIDENCE OF CHARACTER OF PRISONER.—In a criminal case proof of bad character of the deceased is admissible only when it tends in some way in connection with the immediate circumstances under which the killing was done, to show that the prisoner had sufficient grounds, as a reasonable man, to fear that he was himself about to receive at the hands of the deceased some great bodily harm, and that he acted under the influence of fear in killing the deceased.

APPEAL from the District Court of the Thirteenth Judicial District, County of Tulare.

The facts are stated in the opinion.

*Coffroth & Spaulding*, for the Appellant, argued that it was error to overrule the challenge of Carrol for implied bias, and cited *People* v. *Gehr*, 8 Cal. 359; *People* v. *Williams*, 6 Cal. 207; *People* v. *Cottle*, ib. 227; *People* v. *Reynolds*, 16 Cal. 129; *People* v. *King*, 27 Cal. 507; *People* v. *Bodine*, 1 Denio, 281; *People* v. *Wood*, 29 Cal. 636; *People* v. *Weil*, 40 Cal. 268. They also argued that the Court erred in refusing to permit the defendant to introduce proof of the violent and turbulent character of the deceased, citing *People* v. *Murray*, 10 Cal. 309; *State* v. *Monroe*, 5 Georgia, 137; *State* v. *Reynolds*, 1 Kelley, 236; *State* v. *Queensberry*, 3 Stew. & P. 308, 315; *State* v. *Pritchett*, 22 Alabama, 39; *State* v. *Franklin*, 29 Alabama, 14; *State* v. *Dupree*, 33 Alabama, 380; *State* v. *Tackett*, 1 Hawks, N. C. 210; *State* v. *Bellers*, 2 Halstead, 220, 230–237; *State* v. *Smith*, 12 Richard, S. C. 430; *State* v. *Hicks*, 6 Jones, 588; *Com.* v. *Payne*, 1 Metc. Ky. 370; *State* v. *Reppy*, 2 Head, Tenn. 217; *State* v. *De Forest*, 21 Ind. 23; *Com.* v. *Wilson*, 1 Gray, Mass. 337; *People* v. *Campbell*, 16 Ill. 17; 1 Wharton Cr. Law, 641, 642; 2 Wharton Cr. Law, 1026, 1027.

*Attorney General Jo Hamilton*, for the Respondent.

[No brief on file.]

By the Court, WALLACE, J.:

The prisoner was convicted of the crime of murder in the second degree, in killing one Ragan.

In impaneling the trial jury, R. Carrol, testifying as to his competency to serve as a juror, in answer to questions propounded by prisoner's counsel, stated that he had formed an opinion as to the guilt or innocence of the prisoner, but did not know whether that opinion was qualified or unqualified; that his opinion was formed from rumor and from what he

had heard of the case from those who pretended to know the facts; that he believed the statements of these persons, though he did not know whether they were witnesses or not; that he still entertained the same opinion, and that considerable evidence would be required to remove that opinion, and that unless such evidence was produced to change his opinion it was fixed and certain; that he had talked with different persons, and had expressed his opinion without any qualification.

In answer to inquiries made by the Court, he stated that he had no prejudice against the defendant; that he could decide the case impartially; that the opinion he had formed would not influence his judgment; that he would be governed by the evidence, etc.

Upon these facts a challenge for implied bias, interposed by the prisoner, was overruled by the Court below, and Carrol was challenged peremptorily by the prisoner, whose peremptory challenges were exhausted during the impaneling of the jury.

In overruling the challenge for implied bias the Court below manifestly erred.

The statute (Section 347) provides that a challenge for implied bias may be offered for any one of certain causes therein enumerated, among them, that the proposed juror has "formed or expressed an unqualified opinion or belief that the prisoner is guilty or not guilty of the offense charged."

Here it is undisputed that Carrol had "expressed his opinion without any qualification."

The statute declares that the unqualified expression of an opinion as to the guilt or innocence of the prisoner is ground of challenge for implied bias. When such challenge is interposed it is no answer to say that in the mind or thought of the party the opinion was qualified, though in its form of expression it was unqualified. In *People* v. *Cottle*, 6 Cal. 228,

one of the jurors, on his examination as to his competency, said that he had not formed or expressed an unqualified opinion as to the guilt or innocence of the defendant; that he had formed a qualified opinion, founded upon report merely, which opinion he had expressed, but that, in expressing it, he had not expressed any qualification. In that case Mr. Chief Justice MURRAY said: "It is argued by the Attorney General that there is a difference between expressing an unqualified opinion and the unqualified expression of an opinion. And so there is, if we resort to a verbal criticism or mere metaphysical disquisition. It was not the intention of the Legislature to leave the rights of parties to rest upon so narrow and dangerous a foundation. Their obvious intention was to exclude from the jury box every one who had either formed an unqualified opinion, or, having formed an opinion, had expressed it without qualification."

The answers made by Carrol to the inquiries propounded by the Court had no bearing whatever upon the question in hand. It was of no sort of import whether he, in fact, had any prejudice against the prisoner or not, nor whether he supposed that, as a juror, he would be governed by the evidence or not. The admitted fact being that he had unqualifiedly expressed his opinion upon the question of the guilt or innocence of the prisoner, he was thereby become, in judgment of law, incompetent to serve as a juror—just as if it had appeared that he was related by consanguinity to the prisoner (also a ground of challenge for implied bias)—in which case it would be idle to inquire of the proposed juror whether or not, in his opinion, he could give his accused kinsman an impartial trial.

The prisoner offered to show that the deceased was a man of violence, of turbulent character, and bloodthirsty. The evidence was excluded, and, we think, properly. The deceased was unarmed when he was assaulted, and the prisoner approached him from behind, and, while the deceased was

peaceably conversing with an acquaintance, shot him in the back, the ball entering his body " a little to the left of the backbone, nearly at the lower edge of the shoulder blade," giving him a mortal wound; and when he had fallen, the prisoner shot him again, and a third time, each wound being, in the opinion of the medical witness, mortal. It is said in *People* v. *Murray*, 10 Cal. 310, that if a contest has occurred between the deceased and the prisoner, " the reputation of the deceased may sometimes be given in proof, to show that the defendant was justified in believing himself in danger when the circumstances of the contest are equivocal. But here there was, confessedly, no contest, nor even an altercation between the deceased and the prisoner at the time of the killing; for, as we have seen, the shot was fired from behind; and the deceased does not seem to have been even aware of the proximity of the prisoner at the moment. Under such circumstances, the character of the deceased, as being peaceable or otherwise, is of no import. Bad as it may have been, the prisoner had no right to kill him on that account. The bad character of the deceased, when allowed to be proven, should tend, in some degree, in connection with the immediate circumstances under which the killing was done, to show that the prisoner had sufficient grounds, as a reasonable man, to fear that he was himself about to receive, at the hands of the deceased, some great bodily harm, and that he acted under the influence of that fear in killing him. There must be some fact transpiring at the time of the killing indicating the then immediate purpose of the deceased toward the prisoner to be hostile, or at least equivocal, in its character, and which may be illustrated by the known reputation of the deceased, if he had one, in the community as a man of violence, etc.

Here there was no such fact; and the inquiry into the character of the deceased was correctly disallowed.

Judgment reversed, and cause remanded for a new trial.