[No. 1656.]

## THE STATE OF NEVADA, RESPONDENT, v. FRED ROBERTS, FRANK WILLIAMS, J. P. SEVENER, AND T. F. GORMAN, APPELLANTS.

JURY—CHALLENGES—GROUNDS—IMPLIED BIAS—FORMATION OF OPINION.

1. Under Criminal Practice Act, sec. 340 (Compiled Laws of 1900, sec. 4305), making the formation or expression of an unqualified opinion of guilt, when not based upon the reading of newspaper accounts of the transaction, ground for challenge for implied bias, the formation or expression of an unqualified opinion, when shown not to have been based on newspaper accounts alone, renders the jury incompetent, though, in response to a question of the court, he says that he can put aside what he has heard and read, and give defendant an impartial trial.

APPEAL from the District Court of the Fifth Judicial District of the State of Nevada, Humboldt county; *S. J. Bonnifield, Jr.*, Judge.

The defendants were convicted of murder in the first degree, and appeal. **Reversed.**

The facts sufficiently appear in the opinion.

*M. S. Bonnifield* and *Frank X. Murphy*, for Appellants:

I. The admission in evidence of the photographs of the dead body of Jack Welsh, and of the amputated and mutilated portions thereof, to wit, Exhibits B, C, D, and E, was such error as demands a new trial. The evidence shows that the photographs were not the best evidence for any purpose for which they were offered. It shows that the state had better evidence; it shows that they were not instructive and were not illustrative of any material testimony; it shows that the oral testimony as to "the identity of the deceased and as to showing the condition, character, and location of the wound testified to by the attending physician" was the best evidence, undisputed and complete. The record shows that the photographs were not necessary for any legal purpose of the case; that they were not competent evidence on any material point in the case, and that they did not correctly represent the material matters of fact testified to by the doctor. The effect of it was to excite the passions and prejudices of the jury against the defendants, if that was not the sole object of offering them in evidence and exhibiting them to the jury. (22 Ency. Law, 2d ed. 772, note 3; 773, note 4;

775, note 4; 776, note 2; *Selleck* v. *Janesville*, 104 Wis. 570; Am. St. Rep. 76, 892; *Baxter* v. *Chicago and N. W. R. Co.*, 104 Wis. 307; *State* v. *Miller*, 74 Pac. 668, S. W. 644; *Ortis* v. *State*, 30 Fla. 256; *Leidlein* v. *Meyer*, 95 Mich. 586.)

II. The admission of the declarations of the deceased, Jack Welsh, as to the identification of the defendants, was such error as demands a new trial. The evidence shows that at the time of the making of said declarations he was not fully conscious of impending death; that he was not without hope of recovery; that he had not abandoned hope, and that he did not at the time entertain a settled and hopeless expectation of immediate death; and his declarations were inadmissible. (10 Am. & Eng. Ency. of Law, 2d. ed. 364, and notes; Id. 365, note 1, and cases cited; Id. 366, note 1; Id. 367, note 1; Id. 367, note 3; *Rex* v. *Corbett*, 4 C. and P. 544; *Rex* v. *Spilsbury*, 7 C. and P. 187; *Reg* v. *Megson*, 9 C. and P. 418; *Reg* v. *Nicolas* (C. C.) 6 Cox C. C. 120; 10 Ency. Law, 368, note 3.) At the time of declarations Welsh was partially unconscious, and the declarations were inadmissible. (10 Ency. Law, 375, note 11.)

III. The court erred in denying defendants' challenge to the juror, Richard Barry, on the ground that said juror had formed and expressed an unqualified opinion as to the guilt or innocence of the defendants. The defendants exhausted all their peremptory challenges and were compelled to proceed with the trial of the case with the said Richard Barry on the jury. (Comp. Laws, 4305, subd. 8; *State* v. *Millain*, 3 Nev. 409; *State* v. *McClear*, 11 Nev. 57, 59; *State* v. *Raymond*, 11 Nev. 107; *State* v. *Carrick*, 16 Nev. 126; *State* v. *Simas*, 25 Nev. 450; *State* v. *Buralli*, 27 Nev. 41; *State* v. *Buerman*, 53 Pac. 874; *State* v. *Start*, 56 Pac. 15; *State* v. *Murphy*, 37 Pac. 420; *State* v. *Glein*, 41 Pac. 998; *State* v. *Moody*, 51 Pac. 356; *People* v. *Wells*, 34 Pac. 718; *People* v. *Miller*, 57 Pac. 770; *State* v. *Morrison*, 68 Pac. 48; *State* v. *Sheerin*, 33 Am. St. Rep. 600; 2 Ency. Pl. & Pr. p. 430, note 4; *State* v. *Kornstett*, 61 Pac. 805; *State* v. *Lattin*, 52 Pac. 314; *Huntley* v. *Territory*, 54 Pac. 314; *People* v. *Thied*, 39 Pac. 837; *State* v. *Crofford*, 96 N. W. 890; *People* v. *Baker*, 60 Mich. 277; *Black* v. *State*, 42 Tex. 377; *Smith* v. *Eames*, 36 Am. Dec. 522–28; *People* v. *Cottle*, 6 Cal. 228;

*People* v. *Edwards*, 41 Cal. 640; *People* v. *Johnston*, 46 Cal. 78; *Reynolds* v. *United States*, 98 U. S. 145; *People* v. *Mallon*, 3 Lans. 224; *State* v. *Benton*, 2 Dev. & B. 196; *Jackson* v. *Commonwealth*, 11 Leigh. 657; *Frazier* v. *State*, 23 Ohio St. 551; *People* v. *Mather*, 21 Am. Dec. 122; *State* v. *Stevens*, 75 Pac. 546; *Smith* v. *Eames*, 36 Am. Dec. 515, and notes.)

IV. The court erred in refusing to give the following instruction (defendants' instruction No. 10) requested by the defendants: "The court instructs the jury that the policy of our law deems it better that many guilty persons should escape rather that one innocent person should be convicted and punished; so that, unless you can say, after a careful consideration of all the evidence in the case, that every material allegation of the indictment is proved beyond a reasonable doubt, you should find the defendants not guilty."

V. The court erred in refusing to give the following instruction (defendants' instruction No. 15) requested by the defendants: "The jury is instructed by the court, that if, after a careful comparison and candid consideration of all the evidence in the case, you have a doubt of the guilt of the defendants, or any of them, it will then be your duty to determine, if you can, whether such doubt be a reasonable doubt or not, and if you entertain a reasonable doubt as to whether such doubt be reasonable or not, it will be your duty to give the defendants, or any of them, concerning whom you may entertain such reasonable doubt, the benefit of such doubt and acquit them, or any one of them with reference to whom you may entertain a reasonable doubt of his guilt."

VI. The court erred in refusing to give the following instruction (defendants' instruction No. 18) requested by the defendants: "You are instructed by the court that, so far as regards the question of identity of the defendants, or any of them, if you believe, from the evidence and the circumstances proved, that there is reasonable doubt whether the deceased, Jack Welsh, might not be mistaken as to their identity, or the identity of any one of them, then, before the jury would be authorized to convict the defendants, or any one of them, the corroborating circumstances tending to establish their identity must be such as, with the other testi-

mony, produces a degree of certainty in the minds of the jury so great that they can say and feel that they have no reasonable doubt as to the identity of the defendants, or some of them. And in considering the statements made by Welsh, if you believe from the evidence that he made any, then it is your right and duty to consider the testimony given by the witnesses as to those statements; and if, after considering the testimony, if any, given by such witnesses, you entertain a reasonable doubt as to whether said deceased was competent, able to, and did identify these defendants, or any of them, then you should give such defendants, or defendant, the benefit of such doubt and acquit them, or him, unless you are satisfied from all the evidence in the case, beyond a reasonable doubt that these defendants, or some one of them, are or is guilty; and you are not bound to believe the testimony of any of such witnesses so testifying as to the statements made by the deceased immediately prior to his death in the presence of these defendants as to their identity, if you believe from the facts and circumstances that said witnesses may have been mistaken."

VII. The court erred in refusing to give the following instruction (defendants' instruction No. 22) requested by the defendants: "You are instructed by the court that, if the jury believe from the evidence beyond a reasonable doubt that one or more, but not all, of the defendants killed Jack Welsh in the manner alleged in the indictment, but are not satisfied from the evidence beyond a reasonable doubt which of the defendants is the guilty or are the guilty parties, then, as a matter of law, it is the duty of the jury to acquit all of the defendants."

VIII. The court erred in refusing to give the following instruction (defendants' instruction No. 26) requested by the defendants: "The court further instructs the jury that this is not a civil case, but is a criminal prosecution; and that the rules, as to the amount of evidence in this case, are different from those in a civil case, and a mere preponderance of evidence would not warrant the jury in finding the defendants, or any one of them, guilty, but before the jury can convict the defendants, or any one of them, they must be satisfied of his or their guilt, beyond all reasonable doubt."

IX. The court erred in refusing to give the following instruction (defendants' instruction No. 27) requested by the defendants: "You are instructed by the court that your personal opinion as to the facts not proven cannot properly be considered by you as the basis of your verdict. You may believe, as men, that certain facts exist, but, as jurors, you can only act upon evidence introduced upon the trial, and from that, and that alone, you must form your verdict, unaided, unassisted, and uninfluenced by any opinions or presumptions not formed upon the testimony."

X. The court erred in refusing to give the following instruction (defendant's instruction No. 28) requested by the defendants: "You are instructed by the court that, although a written statement purporting to be the dying declaration of Jack Welsh was admitted in evidence in this case, yet it rests with the jury entirely, and not with the court, to say what, if any, weight is to be attached to said statement as evidence in this case. And in considering the said statement the jury should consider all the facts and circumstances introduced in evidence, if any, surrounding the making of same, if the jury believe from the evidence, beyond a reasonable doubt, that any such declaration was made. And if after a candid consideration of said written statement and such facts and circumstances, as aforesaid, if any, the jury should entertain a reasonable doubt as to the reliability of said written statement, or as to any material fact stated in said statement, then the jury are at liberty to disregard the entire statement, and it is the duty of the jury to give the defendants the benefit of any reasonable doubt which may be raised by such written statement, and exists in their minds after a candid consideration of such statement and the facts and circumstances surrounding the making of same."

XI. Each of said instructions correctly states the law and was applicable to the facts in this case as shown by the testimony, and the principle of law stated in each of said instructions was not stated, nor given, in any of the instructions given by the court to the jury in this case. (*People* v. *Bonds*, 1 Nev. 33; *Moresi* v. *Swift*, 15 Nev. 221; *State* v. *Levigne*, 17 Nev. 435; 11 Ency. Pl. & Pr. p. 213, notes 1, 2, 3; 11 Ency.

Pl. & Pr. p. 214, notes 1, 2; *People* v. *Strong*, 30 Cal. 151; *People* v. *Murray*, 41 Cal. 66; *People* v. *King*, 27 Cal. 515; 11 Ency. Pl. & Pr. p. 336, note 5; *State* v. *Cushing*, 53 Am. St. Rep. 883; *Gibson* v. *State*, 18 Am. St. Rep. 96; *Meuly* v. *State*, 8 Am. St. Rep. 447; *Spies* v. *People*, 3 Am. St. Rep. 461.)

*James G. Sweeney*, Attorney-General, and *H. Warren*, District Attorney, for Respondent:

I.   The photographs marked exhibits B, C, D, and E, were properly admissible upon several grounds.   They were clearly admissible for the purpose of identification. (*People* v. *Smith*, 121 N. Y. 578; *Crane* v. *Horton & Co.*, 5 Wash. 479; *United States* v. *Pagliano*, 53 Fed. 1001; *United States* v. *Lot of Jewelry*, 59 Fed. 684; *Travelers Ins. Co.* v. *Sheppard*, 85 Ga. 751; *Beavers* v. *State*, 58 Ind. 530; *Brooke* v. *Brooke*, 60 Md. 524; *Commonwealth* v. *Campbell*, 155 Mass. 537; 22 Am. & Eng. Ency. Law, 2d ed. p. 773, note 5; See Transcript, p. 33, bottom of page; Transcript, p. 46, last five lines; Transcript, p. 33, top of page.)

They were admissible upon the ground that they aided the jury in applying the evidence. (*People* v. *Durrant*, 116 Cal. 179; Rice, Criminal Evidence, 154; Wharton's Criminal Evidence, 9th ed. sec. 544; Thompson on Trials, sec. 869; *Uddercook* v. *Commonwealth*, 76 Pa. St. 340; Bishop's New Crim. Proc. sec. 1097; *People* v. *Fish*, 125 N. Y. 136; *Commonwealth* v. *Campbell*, 155 Mass. 537; *Otis* v. *State*, 30 Fla. 256; *Dederichs* v. *Salt Lake City Ry. Co.*, 14 Utah 137; *Redding* v. *Gates*, 52 Iowa, 210, 213; Transcript, p. 47.)

They were admissible as explanatory or illustrative evidence in enabling witnesses to make their testimony clearer, and to enable jurors to understand it better. (*Alberti* v. *N. Y. L. E. & Western R. R. Co.*, 6 L. R. A.; *Redding* v. *Gates*, 52 Iowa, 213, 765; 22 Am. & Eng. Ency. Law, 2d ed. p. 774; Transcript, p. 34, 35, 36, bottom of page, p. 37, top of page.)

The court's attention is particularly directed to these pages of the transcript, showing that Dr. Giroux made use of these photographs for the purpose of better illustrating his testimony, and to enable the jury to understand it more clearly. An examination of the photographs will show wherein cer-

tain wounds were marked X and Z in indicating parts of the
body referred to in his testimony.

It is a matter of discretion with the trial judge to admit
or exclude photographs offered in evidence.    (22 Am. & Eng.
Ency. Law, 2d ed. p. 776.)

In this matter the court's attention is directed to the fact
that the trial judge, before exercising his discretion in this
matter, adjourned court from 2 p. m. Saturday until Monday
morning to allow counsel and himself to examine the authori-
ties thereon.    (See Transcript, p. 40.)

They are admissible if they are instructive to the jury, and
it is within the discretion of the trial judge to admit or
exclude them on the question of whether or not they are
instructive.    They were instructive.    (*Verran* v. *Baird*, 150
Mass. 141; *Gilbert* v. *West End Street Ry. Co.*, 160 Mass. 403;
*Harris* v. *City of Quincy*, 171 Mass. 472; *Carey* v. *Inhabitants
of Hubbardston*, 172 Mass. 106; Transcript, pp. 33, 34, 35.)

If photographs are admissible, the sole question to be
determined is whether or not they represent faithfully that
which they are intended to portray.    The photographs were
true representations, and faithfully represented what they por-
trayed. (See Transcript, testimony of Kenyon, p. 6; testimony
of Robbins, p. 28; testimony of Giroux, pp. 32, 33, 37, 46.)

It does not make any difference who took the photographs.
Photographs taken by amateurs are admissible if proven to
be correct.    (Underhill on Criminal Ev. par. 51, and authori-
ties cited.)

The case of *State* v. *Miller*, 74 Pac. 658, the only one relied
upon by counsel for defendants, is not in point.    In that case
the photographs were held not properly admissible upon the
ground that they did not truly represent that which they were
intended to portray, and upon that point solely.

Counsel for defendants was mistaken when he said that
the photographs showed that the several parts of the body
which were shown in the exhibits were dismembered or
severed from the body.    Such was not the case, as the evi-
dence will disclose, and, even if they were, it would be
immaterial.

Photographs of the head and neck of a murdered man,
showing the wound, when proved to be true representations

of the location of the wound, were held admissible in *People*
v. *Fish*, 125 N. Y. 136. And, subject to like limitation, the
same rule was applied by the court in *Redding* v. *Gates*, 52
Iowa, 210, and *Alberti* v. *N. Y. L. E. & W. R. Co.*, 6 L. R.
A. 765.

II. The dying declarations of deceased, Jack Welsh,
were clearly admissible. The evidence shows beyond any
question of a doubt that at the time of making the declara-
tions he was fully conscious of impending death. (See Tran-
script, pp. 60, 62, 63, 64, 65, 66, 67, 68, 71, 73, 74.) That
he had abandoned all hope and all expectation of recovery.
(See Transcript, pp. 60, 62, 63, 64, 66, 67, 68, 71, 73, 74.)
That at the time of making the declarations he was entirely
conscious, and in full possession of his intellectual faculties.
(See Transcript, pp. 60, 62, 63, 64, 65, 66, 67, 68, 71, 73, 74.)

The declarations are admissible upon the ground of identi-
fication. (*Mattox* v. *U. S.*, 146 U. S. 140; *Commonwealth* v.
*Roddy*, 184 Pa. 274; *State* v. *Freeman*, 1 Spears (S. C.) 57;
*Brotherton* v. *People*, 75 N. Y. 158; *McLean* v. *State*, 16 Ala.
672; 10 Am. & Eng. Ency. Law, 2d. ed. p. 383; Transcript,
pp. 76, 77, top of page.)

The dying declarations of the deceased, Jack Welsh, were
admissible in evidence, they having been made in the presence
of defendants, and were admissible for the purpose of show-
ing defendants' conduct and behavior when identified and
charged as being his assailants, and accused of the crime, for
which purposes they were specifically offered. (See Tran-
script, p. 77, top of page; pp. 76, 79, testimony of Staunton;
*State* v. *Nash and Redout*, 7 Iowa, 347; *State* v. *Gillick*, 7
Iowa, 287; *State* v. *Brunetto*, 13 La. Ann. 45; *Kendrick* v.
*State*, 55 Miss. 436; *Powers* v. *State*, 74 Miss. 777; *Donnelly*
v. *State*, 26 N. J. L. 463; 10 Am. & Eng. Ency. Law, 2d ed.
p. 360.)

The rule as to the admissibility of the dying declarations
does not require that they should have been made while the
sufferer was literally breathing his last. If the declarations
were made under a sense of impending dissolution, it does
not matter if death failed to ensue until a considerable time
after the declarations were made. (10 Am. & Eng. Ency.
Law, 2d ed. p. 369, and authorities there cited.)

The length of time elapsing between the making of the declarations and the declarant's death is, however, one of the elements to be considered in determining whether the declarations were made under a sense of impending death. (10 Am. & Eng. Ency. Law, 2d ed. p. 369, and authorities cited.)

In this instance the deceased, Jack Welsh, died within three hours of the rendition of the dying declarations.

Even admitting, for the sake of argument, that the deceased was partly unconscious, and which we strenuously deny, and refer to the evidence, the declarations were admissible, and the objection should go to their credibility and not to their admissibility. (*Hays* v. *Commonwealth* (Ky. 1890) 14 S. W. 833; *People* v. *Beverly*, 108 Mich. 509; 10 Am. & Eng. Ency. Law, p. 376, under note "Narcotics.")

A positive statement by the victim identifying the defendants as his assailants is not an expression of opinion. (10 Am. & Eng. Ency. Law, 2d ed. p. 378.) Dying declarations of the deceased as to the state of declarant's mind are proved by the express or direct language of the declarant. (10 Am. & Eng. Ency. Law, 2d ed. p. 388; Transcript, pp. 60, 62, 63, 64, 65, 66, 67, 68, 71, 73, 74.)

We submit to the court that the evidence shows that the dying declarations made by Welsh were as plain, concise and intelligent as the English language could make them; that his answers in response to queries put to him were direct, responsive and relevant.

The condition and conduct of the declarant as to the sense of impending dissolution may be inferred from the apparent condition and nature of his injuries, and his conduct and deportment. (10 Am. & Eng. Ency. Law, 2d ed. p. 389.)

We submit that his condition, his conduct and deportment were those of a dying man in full possession of his intellectual faculties, but resigned to his fate.

III. The trial court did not err in disallowing the challenge of counsel for defendants to the juror, Richard Barry, upon the ground that he had formed and expressed an unqualified opinion under the testimony on his examination on his *voir dire*. (See Transcript, pp. 1, 2, 3, 4.)

The real question to be determined, as to the qualification

or disqualification of a juror on the question of having formed and expressed an opinion, is the ability of the juror to set aside the opinion formed, and render an impartial verdict on the law and the evidence.   (*State* v. *McClear*, 11 Nev. 39, 66, 68; *State* v. *Simas*, 25 Nev. 432, 451; *State* v. *Millain*, 3 Nev. 371, 379, 384; *State* v. *Raymond*, 11 Nev. 98; *State* v. *Davis*, 14 Nev. 439, 448, 450; *State* v. *Carrick*, 16 Nev. 120, 128; *People* v. *Wong Ark*, 96 Cal. 125; *State* v. *Smith*, 49 Conn. 376; *Coughlin* v. *People*, 144 Ill. 140; *Elliott* v. *State*, 73 Ind. 14; *State* v. *Revells*, 35 La. Ann. 302; *Brown* v. *State*, 57 Miss. 424, 430; *State* v. *Bronstine*, 147 Mo. 520; *Bolin* v. *State*, 51 Neb. 581; *State* v. *Sawtelle*, 66 N. H. 488; *State* v. *Jones*, 80 N. C. 415; *Commonwealth* v. *Crossmire*, 156 Pa. St. 304; *People* v. *O'Loughlin*, 3 Utah, 133; *State* v. *Meaker*, 54 Vt. 112; *Dejarnette* v. *Commonwealth*, 75 Va. 867; *State* v. *Baker*, 33 W. Va. 329; 17 Am. & Eng. Ency. Law, 3d ed. p. 1141, and authorities cited under note 8.)

In England, and in some states of the United States, it has been determined that an opinion disqualifying a juror must be such as to imply malice, ill-will, or hostility against the prisoner.   (*State* v. *Willis*, 71 Conn. 293, 315; *State* v. *Wong Ark*, 96 Cal. 125; *State* v. *Sawtelle*, 66 N. H. 488; *Waters* v. *State*, 51 Md. 430; *State* v. *Potter*, 18 Conn. 166; *State* v. *Wilson*, 38 Conn. 126.)

In this case juror Barry testified he had no malice or bias, either for or against the state or defendants, and was conscious that he could lay aside all that he had heard and read, and render a fair and impartial verdict according to the law and evidence.   (See Transcript, pp. 3, 4.)

The courts of all the states of the Union hold that jurors will not be excluded on account of opinions which they may possess, if they are founded on rumors and newspaper reports. (17 Am. & Eng. Ency. Law, p. 1143.)   Our own statutes so expressly state.   (Comp. Laws, sec. 4305, subdv. 8, Crim. Pr. Act.)

In this case juror Barry testified, in answer to a query of the district attorney, that the opinion he formed and entertained was formed on general rumor and from what he had read in the newspapers.   (See Transcript, p. 3; *People* v. *Owens*, 125 Cal. 482; *Gallet* v. *United States*, 87 Fed. 446;

*State* v. *Williams*, 3 Stew. (Ala.) 454; *Hardin* v. *State*, 66 Ark. 53; *People* v. *Brown*, 59 Cal. 345; *People* v. *Irwin*, 77 Cal. 494; *State* v. *Hoyt*, 47 Conn. 530; *United States* v. *Barber*, 21 D. C. 456; *Brown* v. *State*, 40 Fla. 459; *Myers* v. *State*, 97 Ga. 94; *Plummer* v. *People*, 74 Ill. 361; *State* v. *Butler*, 97 Ind. 378; *State* v. *Young*, 104 Iowa, 730; *State* v. *Dent*, 71 Md. 295; *State* v. *Bussey*, 58 Kan. 679; *People* v. *Foglesong*, 116 Mich. 556; *State* v. *Bronstine*, 147 Mo. 520; *State* v. *Degraff*, 112 N. C. 688; *State* v. *Saunders*, 14 Or. 300; *Commonwealth* v. *Egan*, 190 Pa. St. 10; *Woods* v. *State*, 99 Tenn. 182; *Morrison* v. *State*, 40 Tex. Crim. 473; *People* v. *O'Loughlin*, 3 Utah, 133; *State* v. *Meyer*, 58 Vt. 457; *State* v. *Carey*, 15 Wash. 549; *Wright* v. *Commonwealth*, 32 Gratt. (Va.) 941.)

In order to discover whether a juror is qualified or disqualified to act as a juror, his whole examination on his *voir dire*, and not upon a part thereof, or by use of particular or catch expressions, must be considered. (*State* v. *Cunningham*, 100 Mo. 382; *Clark* v. *Commonwealth*, 123 Pa. St. 555; *Butler* v. *State*, 97 Ind. 378; *Pemberton* v. *State*, 11 Ind. App. 297; *U. P. Ry. Co.* v. *Motzner*, 8 Kan. App. 431; *State* v. *Bailey*, 50 La. Ann. 533; *Burlington* v. *Beebe*, 14 Neb. 463; *Hall* v. *Commonwealth*, 89 Va. 179; 17 Am. & Eng. Ency. Law, 2d ed. p. 1150.)

Where it is expressly declared by statute, as it is in our own state, and in nearly all of the states of the Union, that if opinions of jurors be founded on rumors or newspaper reports, such opinions will not disqualify them from acting as jurors, providing the judge of the trial court is satisfied, from the statements of the juror, that he can and will act impartially. (*Coughlin* v. *People*, 144 Ill. 140; *State* v. *Egan*, 190 Pa. St. 10; *State* v. *Cunningham*, 100 Mo. 383; *State* v. *Roddy*, 184 Pa. St. 274; *Thiede* v. *Utah Territory*, 159 U. S. 510; *Hopt* v. *Utah*, 120 U. S. 430; *People* v. *Miller*, 125 Cal. 44; *People* v. *Wells*, 100 Cal. 227; *People* v. *Collins*, 105 Cal. 504; *People* v. *Jones*, 2 Colo. 351; *Thompson* v. *People*, 59 Pac. 51; *Spies* v. *Illinois*, 123 U. S. 131, 169; *Shields* v. *State*, 149 Ind. 395; *Smith* v. *Commonwealth*, 100 Ky. 133; *State* v. *Burgess*, 78 Mo. 234; *State* v. *Sheerin*, 12 Mont. 539; *State* v. *Bolin*, 51 Neb. 581; *State* v. *Ekanger*, 8 N. Dak. 559;

*Palmer* v. *State*, 42 Ohio, 596; *State* v. *Ingram*, 23 Or. 434; *Woods* v. *State*, 99 Tenn. 182; *State* v. *Ashton*, 31 Tex. 479; 17 Am. & Eng. Ency. Law, 2d ed. p. 1150.)

If the opinion is not based on such character of information as is necessary to involve disqualification, and is not such as is necessary to affect the impartiality of his action, a statement by the venireman upon his examination that he can do impartial justice according to the law and the evidence is considered sufficient to justify his acceptance as a juror. (*State* v. *DeGraff*, 113 N. C. 688; *Hopt* v. *Utah*, 120 U. S. 430; *State* v. *Morse*, 35 Or. 462; *Commonwealth* v. *Eagan*, 190 Pa. St. 10; *Sims* v. *Jones*, 43 S. C. 91; *Woods* v. *State*, 99 Tenn. 182; *Trotter* v. *State*, 37 Tex. Crim. 468; *State* v. *Meyer*, 58 Vt. 457; *Commonwealth* v. *Lyles*, 88 Va. 396; *State* v. *Baker*, 33 W. Va. 329; *Baker* v. *State*, 88 Wis. 140; *Bryant* v. *State*, 7 Wyo. 311; 11 Am. & Eng. Ency. Law, p. 1152, and authorities under note 3.)

The attention of the court is respectfully called to the fact that the first five cases cited by counsel for defendants, in support of their contention that juror Barry was disqualified to act as a juror, are not in point, in this: That in each of those five cases first cited the challenge was interposed on the ground of implied bias, and not upon the ground of having formed or expressed an unqualified opinion. In California, as in our state, the statute provides challenges for cause, for implied bias, and disqualification of a juror by reason of his having formed and expressed an unqualified opinion. In addition to this point, the cases above referred to are not in point, for the reason that in every instance the juror on his examination on his *voir dire* testified that, in addition to having formed and expressed an unqualified opinion, it would take some evidence to remove that opinion before he could act impartially in the case. In this case juror Barry testified to no such thing, but unequivocally stated that he could lay aside everything that he had heard and read, and render a true and impartial verdict on the law and the evidence.

In the case of *State* v. *Wells*, 100 Cal. 230, cited by counsel for defendants, and seemingly relied on by them as their strongest case, we respectfully contend and submit that the

decision is practically conclusive against their contention.

When a juror on his *voir dire* testifies to counsel for defendants that he has a fixed, unqualified opinion going to the guilt or innocence of the defendants, and upon his cross-emamination testifies that such opinion is founded on general rumor and newspaper reports, and that he can and will lay aside everything he has heard and read, if accepted as a juror, that he entertains no bias or prejudice either for or against state or defendants, and that he will render a true and impartial verdict in accordance with the evidence and the law, he is qualified, both under the authorities of our own court, and under the authorities herein cited, to act as a juror. It is not error to refuse a challenge when interposed upon such an examination.

Where the examination of a juror on his *voir dire* discloses that it is susceptible of different constructions, the decision of the trial court upon his qualification or disqualification is conclusive, and will not be reversed upon appeal. (*People* v. *Wells*, 100 Cal. 227.)

We submit that too much importance has been given to this point. It has been discussed as though it possessed real, and not fanciful, merit. The truth is that it has no merit at all. The examination of the juror discloses, if anything, that he had an opinion, fixed and definite, but it also discloses, beyond dispute, that the opinion was qualified, and not an unqualified one. The fact that his opinion possessed either character can only be drawn by inference, but we know of no reason why either character of opinion may not be a fixed and settled one, and the inference in this case that the opinion possessed by this juror was a qualified one is certainly much stronger than his opinion was unqualified, for the reasons: (1) He said that he was not ready to make up a verdict upon the opinion that he had; (2) that it depended and rested upon the truth or falsity of what he had heard or read; (3) that he had no bias or prejudice against defendants, and (4) that he was "conscious" that he could lay aside all that he had heard and read, and rest his verdict upon the law and the evidence in the case. (See Transcript, pp. 2, 3, 4.)

IV. The instructions given by the court, as shown by the

record, cover, in substance, every principle of the law applicable to the case at bar.

It is not error to refuse instructions that have already been given in substance. (*State* v. *Buralli*, 27 Nev. 41; *People* v. *Roney*, 100 Cal. 375; *People* v. *Hawes*, 98 Cal. 648.)

The court is not required to repeat itself. (*People* v. *Cogwill*, 95 Cal. 596; *People* v. *Cochran*, 61 Cal. 550; *People* v. *Lenon*, 79 Cal. 630–1; *People* v. *Douglass*, 100 Cal. 103; *State* v. *Buralli*, 27 Nev. 41.)

The instructions given by the court are to be considered together. (*State* v. *Buralli*, 27 Nev. 41; *People* v. *Etting*, 99 Cal. 577.)

A court is not required to lay stress on particular points in the testimony when an instruction of the court to the jury instructs them to carefully consider all the facts and the evidence. (*State* v. *Buralli*, 27 Nev. 41; *Coffin* y. *United States*, 162 U. S. 664; *Hickory* v. *United States*, 160 U. S. 408.)

A defendant is entitled to have instructions given to the jury embodying every legal principle applicable to his case, but not necessarily in any particular language. If given in substance, they are sufficient. *State* v. *Buralli*, 27 Nev. 41; *State* v. *Ward*, 19 Nev. 297, 306; *State* v. *Cardelli*, 19 Nev. 319, 330.)

The instructions of the court in this case fully state the law and are upheld by a host of well-considered authorities. (See Transcript, "Instructions Given," pp. 58–76; also "Instructions Given by the Court," pp. 338–358.)

No exceptions were taken by the defendants to any instruction, or to any part of an instruction, given by the court. (Transcript, p. 358.)

*M. S. Bonnifield, Frank X. Murphy,* and *William Woodburn,* for Appellants, in reply:

I. The first error complained of by appellants is that the court below overruled the objection made by appellant's attorneys to a juror named Richard Barry, on the ground that he had formed and expressed an unqualified opinion as to the guilt or innocence of the defendants, to which ruling defendants duly excepted.

The bill of exceptions shows that the said Barry was one

of the trial jury, and that the defendants had exhausted all their peremptory challenges.

The juror, in answer to questions as to his qualifications as such propounded by the attorneys for defendants, said: "I have conversed with some of the witnesses in this case who pretend to know the facts. Heard Welsh was killed on a freight train, and that he had identified certain parties. Heard defendants were the parties. I believed what I heard and formed an opinion as to their guilt or innocence. The opinion became fixed in my mind when I heard and read about the matter. I have never changed it up to the present. Have now a definite opinion as to their guilt or innocence, and have expressed it."

When cross-examined by the district attorney he said he was not ready to render a verdict against the defendants from what he had read; that it depended upon what he had heard and read as being true, and he would try the case on evidence and law.

It requires no citation of authorities to show that this juror was clearly ineligible under the common law or the laws of Nevada from his examination by the attorneys for defendants.

The question to be determined is: Did his answer to the questions of the district attorney on cross-examination, which were in irreconcilable conflict with his direct examination, render him eligible to be a juror?

This court has said, in the case of *State* v. *McClear:* "When not regulated by statutory provisions we think that whenever the opinion of the juror has been formed * * * or from any cause has been so deliberately entertained that it has become a fixed and settled belief of defendant's guilt or innocence, it would be wrong to receive him. * * * In deciding these questions courts should ever remember that the infirmities of human nature are such that opinions once deliberately formed and expressed cannot easily be erased and prejudices openly avowed cannot be readily eradicated from the mind." (*State* v. *McClear*, 11 Nev. 54, 67, 68; *People* v. *King*, 27 Cal. 507; 9 Mont. 38.)

If the opinion in the mind or thought of the juror was unqualified, still, if he had expressed his opinion unqualifi-

edly, he is an incompetent juror, and should have been rejected. (*People* v. *Edwards*, 41 Cal. 640; *People* v. *Williams*, 6 Cal. 206; *People* v. *Brotherton*, 43 Cal. 531, 532; 8 Cal. 562.)

The fact that the juror stated on cross-examination that his opinion was formed from rumors, that he could try the case impartially, and decide according to the law and evidence, is entitled to no consideration if he has formed or expressed an unqualified opinion as to the guilt or innocence of defendants, even if the opinion is formed from rumor. (*People* v. *Gehr*, 8 Cal. 362, 363.)

At common law a juror who entered the box with an opinion as to the guilt or innocence of the accused was *ipso facto* disqualified from acting in the case. (*People* v. *Wells*, 100 Cal. 229, 230.)

The statute creates an innovation upon this principle and disqualifies the juror by reason of having formed or expressed an unqualified opinion. The opinion of the juror was not formed entirely from public rumors or statements of public journals, but also from persons who pretended to know the facts of the killing of Welsh, which he believed to be true, and, so believing, formed and expressed without qualification the fixed opinion he had formed. It is of no moment that the juror should declare under oath that he would and could act fairly and impartially upon the matters to be submitted to him.

Our statute in relation to the formation of juries and the grounds of challenge to jurors was copied from that of California, and we adopted the construction placed upon its provisions by the supreme court of that state.

The decisions of the Supreme Court of Nevada, particularly the case of *State* v. *McClear*, 11 Nev. 54, are in perfect harmony with those of our sister state.

*State* v. *Simas* does not support the views of the respondent. In that case one Enoch Morrill, a juror, stated on his *voir dire* that he had read about the case in the newspapers, and that his son had stated what he thought were the facts in the case, but he did not think what his son said to him had anything to do with his opinion. Against the objection of defendant the court held that he was a competent juror. Judge Massey reluctantly concurred in that opinion on the

sole ground that the challenge of this juror failed to state any of the causes of challenge prescribed by section 340 of the criminal practice act. (*State* v. *Simas*, 25 Nev. 452.)

In the above case (*State* v. *Simas*) it appears two jurors, J. E. Ede and A. D. Gould, were challenged by the defendant on the ground that each of them had formed an unqualified opinion as to the guilt or innocence of defendant, which was overruled by the court, and the ruling assigned as error. The answers of Ede showed that he had not formed any opinion whatever as to the guilt or innocence of defendant, while some of his answers showed that his opinion was formed from what he had heard on the street. Gould testified that his opinion was formed from what he had read in the newspapers. (*State* v. *Simas*, 25 Nev. 451.)

There is no similarity between the facts in the Simas case and the one at bar as far as the qualification of juror Barry is concerned.

The jurors Morrill, Ede and Gould were clearly qualified because their opinions were made from idle street talk and reading newspapers. In this case the opinion of juror Barry was formed in part from conversing with witnesses and persons who claimed to know the facts attendant upon the killing of Jack Welsh; that he heard that Welsh had identified defendants; that it was fixed and definite; that he still entertained that fixed opinion.

II. Defendants claim the court erred in admitting as evidence photographs of the murdered man, Welsh, against the objection of the attorneys for defendants. They were offered by the district attorney not only for the purpose of identification, but also to show the appearance of the wounds on the body of Welsh and the character of the wounds he was suffering from. Also, photographs of defendants were admitted against objection to show their appearance at the time of the commission of the crime, when the record shows that they were not taken until five days after the homicide occurred. (See Evidence, pp. 116, 117.)

The most common use of photographs is to enable witnesses to make their testimony clearer and juries to understand it better. They are admissible when the identification of the accused is in issue to show his changed appearance at differ-

ent times. They are like maps and diagrams permitted as evidence showing the scene of the homicide and the facts surrounding the homicide in support of the theory of the prosecution. (*People* v. *Whalen,* 123 Cal. 551; *People* v. *Crandall,* 125 Cal. 133.)

At best photographs are but secondary evidence, only admissible when lack of better evidence compels a resort to them. (3 Rice on Ev. sec. 151.)

They were not introduced for any legitimate purpose, because the identity of Welsh was never questioned. The witnesses, Kelly and Albert Waldham, the companion of Welsh, were on the freight train and witnessed the assault on Welsh and identified him. The man for whom Welsh worked identified him (Welsh) before he died. Welsh told who he was, and therefore there was no necessity for the introduction of his photograph. The wounds on the body of Welsh and the course of the bullets and the pain he suffered were accurately described by Dr. Giroux, Welsh's physician. The photographs were not taken until the day after Welsh died, and by one named Kenyon, an employee of the Southern Pacific Railroad Company, who was not following the business of a photographer and who was not shown to have ever learned the art or science of photography. They were not substantially necessary or instructive to show any material facts or conditions, and are of such a character as to arouse sympathy or indignation, or divert the minds of the jury to improper or irrelevant considerations. (*Selleck* v. *The City of Janesville,* 104 Wis. 575; *Sebert* v. *West End St. R. R. Co.,* 160 Mass. 403; *Harris* v. *Quincy,* 171 Mass. 473; *Fore* v. *State,* 75 Miss. 727; *Dobson* v. *Philadelphia,* 7 Pa. 321; *State* v. *Miller,* 74 Pac. 653.)

It is claimed for the respondent that the case of *State* v. *Miller,* 74 Pac. 653, is not in point. They are mistaken in the assertion that it is the only case relied upon by counsel for defendants. The decision is in perfect harmony with that of the case of *Selleck* v: *The City of Janesville,* 104 Wis. 575, and the cases therein cited, which are of recent date.

Upon these two foregoing assignments of error we respectfully submit that the judgment of the court below should be reversed and a new trial ordered.

By the Court, BELKNAP, C. J.:

The prisoners were convicted of murder in the first degree. A motion for a new trial was denied. They have appealed from the order and judgment.

In impaneling the trial jury, Richard Barry was examined. He stated, in substance, that he thought he had conversed with some of the witnesses, and with persons who pretended to know the facts; that he had read newspaper accounts of the crime; that he had heard and read that deceased had been killed on a freight train east of Lovelock about August 20th, last, and prior to his death had identified the prisoners, or some of them, as the guilty parties; that he had formed and expressed an opinion with reference to the guilt or innocence of the prisoners; that his opinion became fixed and definite at the time he read and heard of the offense, and he then had such opinion, based upon what he had heard; and that he had expressed that opinion. He was then challenged on the ground that he had formed and expressed an unqualified opinion as to the guilt or innocence of the accused. In cross-examination by the prosecution, he testified that his mind was not then in condition to render a verdict against the prisoners from what he had heard; that his opinion was formed upon general rumors, and from what he had read in the newspapers; that he would not refuse to give anyone a fair trial and rest his verdict upon the law and evidence; that, if what he had heard and read were true, the prisoners were guilty, and, if untrue, were not guilty, of the offense charged, and, if sworn as a juror, he would lay aside anything he had heard, and try the case upon the evidence and law, and render a true verdict accordingly. The court then asked him the following question: "I understand you to say you are conscious that, if you are sworn and accepted as a juror, you could put aside everything you have heard and read, and try the case according to the evidence and the law, and give the defendants a fair and impartial trial?" To which he answered, "I could." The court overruled the challenge. Defendants, whose peremptory challenges were exhausted before the completion of the jury, excepted.

Giving full consideration to all of the testimony contained in the above statement of the juror, it shows that he had

expressed an unqualified opinion that the prisoners were guilty or not guilty of the offense charged. Section 340 of the criminal practice act (section 4305, Compiled Laws of 1900) enumerates nine separate cases for a challenge for implied bias, as follows (section 4305; section 340): "A challenge for implied bias may be taken for all or any of the following causes: * * * Eighth, having formed or expressed an unqualified opinion or belief that the prisoner is guilty of the offense charged; *provided*, that such unqualified opinion or belief shall not have been formed or expressed or based upon the reading of newspaper accounts of the transaction." That the juror's opinion was not based upon newspaper accounts alone is satisfactorily shown by his testimony in response to questions asked by the court at the conclusion of his examination. The answer made by the juror in cross-examination could not affect the question of his competency, under the statute.

As was said by the Supreme Court of California in a similar case: "It was of no sort of import whether he in fact had any prejudice against the prisoner, or not, or whether he supposed, as a juror, he would be governed by the evidence, or not. The admitted fact being that he had unqualifiedly expressed his opinion upon the question of the guilt or innocence of the prisoner, he thereby became, in judgment of law, incompetent to serve as a juror, just as if it had appeared that he was related by consanguinity to the prisoner (also a ground of challenge for implied bias), in which case it would be idle to inquire of the proposed juror whether or not, in his opinion, he could give his accused kinsman an impartial trial." (*People* v. *Edwards*, 41 Cal. 640; *People* v. *Brotherton*, 43 Cal. 530; *People* v. *Cottle*, 6 Cal. 227.)

The court erred in overruling the challenge. Judgment reversed, and cause remanded for a new trial.

TALBOT, J., and FITZGERALD, J., concur.